**Andre WISE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 18, 2002.

Decided Nov. 19, 2002.

Stephen A. Sawyer, Philadelphia, for petitioner.

Charlene Stewart Barnaba, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Andre Wise (Claimant) appeals from a decision of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) decision denying his claim petitions under the Workers' Compensation Act (Act).[1]

Claimant, a firefighter for the City of Philadelphia (Employer), suffered a series of injuries to his right wrist beginning in March 1993 when he twisted his wrist while pulling a mattress out of a burning house. On July 28, 1993, while removing the window at another house fire, Claimant hit his wrist on the frame and it was put in a cast for three months during which time he worked light duty. In February 1994, a partial fusion was performed on his right wrist. Then, in August 1995 after an incident while carrying a hose line, Claimant's arm was in a cast for another month, and he again worked light duty during that time. Finally, on March 25, 1996, while working overtime in an ambulance, Claimant braced himself while in the back of the ambulance and suffered further wrist problems. On May 30, 1996, a fuller fusion surgery was performed, and Claimant has been on light duty up until at least January 2001.

Claimant filed five petitions regarding these injuries. The first three were filed in 1996 in connection with the July 28, 1993 injury: a claim petition seeking benefits for the loss of use of his right arm [2], a modification petition [3] seeking partial disability benefits, and a penalty petition alleging Employer's failure to issue proper documentation.[4] After the first hearing on these three petitions, Claimant filed a claim petition in 1997 seeking specific loss benefits as well as a modification petition alleging that his current limited-duty wages were less than his pre–1996 injury wages. The cases were consolidated for evidentiary purposes.

Before the WCJ, Claimant testified that following the second surgery, he could use his right arm to gesture and point, could carry things in his right hand such as his cigarettes or a soda, could drive automatic transmission cars, could carry up to 10 pounds but had difficulty dropping things, could write his name right-handed but lacked the strength to hold on in the bus, experienced numbness in the top part of his right hand, had to dress himself with his left hand, and noticed that his right hand and arm were "skinnier" than his left. On cross-examination, Claimant testified that he no longer received physical therapy because there was nothing else it could accomplish.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

2. Section 306(c) of the Act, 77 P.S. 513, provides: "The following schedule of compensation is hereby established: For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: (1) For the loss of a hand, sixty-six and two-thirds per centum of wages during three hundred thirty-five weeks." Section 306(c)(24) goes on to pro-

vide that the: "permanent loss of the use of a hand ... shall be considered as the equivalent of the loss of such hand."

3. This petition was originally a claim petition but was later amended to a modification petition.

4. Employer did not issue formal documentation for the July 28, 1993 injury, but paid injured on duty benefits to Claimant.

In support of his claim petition, Claimant presented the testimony of Scott H. Jaeger, M.D. (Dr. Jaeger), board-certified in orthopedic surgery. He testified that he performed a single evaluation of Claimant and found that Claimant has permanent limitation and restrictions to the right arm, and that he suffered a loss of use for all "occupational" intents and purposes on the right arm and wrist. Dr. Jaeger further testified that based on American Medical Association (AMA) Guidelines, Claimant had a 65 percent loss of use of the right wrist,[5] that this loss was a result of the May 30, 1996 operation, and that he did not expect Claimant's condition to improve. He further testified that Claimant was capable of performing activities such as buttoning a shirt with his right hand, but did them with the left hand instead because it took a shorter time, and he could probably lift anything under 20 pounds. As to his definition of "loss of use," Dr. Jaeger also explained that Claimant suffered a specific loss due to the impact on his occupational activities, he understood that under the Act, a specific loss required more than just limitations of occupational activities, and that he used the word "occupational" in this case but ordinarily did not.

Employer presented the testimony of Noubar A. Didizian, M.D. (Dr. Didizian), board-certified orthopedic surgeon, who testified that he performed a medical examination of Claimant, that he reviewed and conducted a series of diagnostic tests, and that Claimant's grip strength was "the range that most of the female population works with" and should not have caused him to drop objects. He also testified that Claimant had permanent limitations because of the wrist fusion, that working in a light-duty capacity was appropriate, and that Claimant would not be able to remain as an active firefighter. Dr. Didizian opined that Claimant's symptoms related to the 1993 injury and that Claimant's loss was to his right wrist, not his right arm, and under the AMA Guidelines, Claimant's fused wrist represented nine percent of the extremity.

Rejecting Dr. Jaeger's opinion that there was a loss of use of the arm as a whole, finding that there was not the requisite degree of loss of use of the hand for all practical intents and purposes based on both doctor's opinions, accepting Claimant's testimony in general but finding that he was still able to perform many activities with his hand, and rejecting Dr. Didizian's testimony that Claimant's wrist problems relate solely to the 1993 injury, the WCJ found that Claimant's disability from his wrist condition had not ceased and that he could not perform his pre-injury job without limitation. The WCJ, therefore, found that Claimant had not satisfied his burden with respect to specific loss of his arm, forearm or hand and denied the two claim petitions. The WCJ also found that Claimant failed to demonstrate a reduced earning power after the 1993 incident and denied that modification petition, but found that Claimant did demonstrate reduced earning power after the 1996 injury and granted that modification petition. Finally, the WCJ found that although Employer did not issue a notice of compensation payable on the 1993 injury, there were no unpaid benefits and dismissed the petition as moot. Claimant then appealed to the Board which affirmed the WCJ's decision and this appeal followed.[6]

---

5. Initially, Dr. Jaeger testified that Claimant had a 65 percent loss of use of the right arm, but on cross-examination, he said that when he referred to loss of use of the right hand and arm, he meant the loss of use of the right wrist.

6. Our scope of review is limited to determining whether necessary findings of fact are

Claimant now contends that the WCJ erred in finding that Dr. Jaeger never testified that Claimant suffered a specific loss of use of his right hand because he erred in finding that there was no substantial evidence that Claimant had suffered a loss of use of his right arm. To establish a specific loss, Claimant had to establish that either "the specific bodily member was amputated or that the claimant suffered the permanent loss of use of the injured bodily member for all practical intents and purposes." *Crews v. Workers' Compensation Appeal Board (Ripkin)*, 767 A.2d 626, 630 (Pa.Cmwlth.2001); *Diaz v. Jones & Laughlin Steel Corp.*, 155 Pa.Super. 177, 38 A.2d 387 (1944); 77 P.S. § 513. "Whether a person has suffered a specific loss is a question of fact to be resolved by the factfinder who in this case is the WCJ." *Allegheny Ludlum Steel Corp. v. Workers' Compensation Appeal Board (Malobicky)* 753 A.2d 330, 335 (Pa.Cmwlth. 2000).

In *Reading Tube Corp. v. Workmen's Compensation Appeal Board*, 12 Pa. Cmwlth. 45, 315 A.2d 678, 679 (1974), we held that whether a person had lost his member was not determined by whether he could no longer perform his occupation, noting that:

Judge Woodside, in *Curran v. Walter E. Knipe and Sons, Inc.*, 185 Pa.Super. 540, 547, 138 A.2d 251, 255 (1958), reviewed the legislative history of Section 306(c) and clearly discussed the proper test under that Section: 'The test to be applied is whether the claimant has suffered 'the permanent loss of use of the injured member for all practical intents and purposes.' This is not the same test as the 'industrial use' test although the two would often bring the same result if

supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Sheridan*

applied in particular cases. Generally the 'all practical intents and purposes' test requires a more crippling injury than the 'industrial use' test in order to bring the case under Section 306(c) supra. However it is not necessary that the injured member of the claimant be of absolutely no use in order for him to have lost the use of it for all practical intents and purposes.'

*See also Allegheny Ludlum Steel Corp.* In *Irwin Sensenich Corp. v. Workmen's Compensation Appeal Board*, 15 Pa.Cmwlth. 518, 327 A.2d 644 (1974), where the claimant's medical expert testified that the claimant had lost the use of his leg for all intents and purposes as far as his occupation was concerned but that he was still capable of using his leg for other purposes, we held that "Appellant herein discredited his own case," *Id.* at 646, and denied specific loss benefits. *See also Mundorff v. Workmen's Compensation Appeal Board (Tippins Machinery)*, 128 Pa.Cmwlth.553, 563 A.2d 1311 (1989).

In this case, Claimant's medical expert stated that "it was my opinion that he suffered a loss of use for all *occupational* intent [sic] and purposes on the right wrist and arm." (Reproduced Record at 124a.) (Emphasis added.) On cross-examination, the following exchange occurred with Dr. Jaeger:

Q: You also write that—and this is on the last page, page four of your narrative report. It says: Because of this and the impact that it has on his occupational activities, it is my opinion, within a reasonable degree of medical certainty, that this patient has suffered a specific loss to his right hand and arm?

A: Yes.

*v. Workers' Compensation Appeal Board (Anzon)*, 713 A.2d 182 (Pa.Cmwlth.1998).

Q: I think we have modified that into his wrist; right? His wrist from the forearm down? [7]

A: Yes, from the forearm down.

Q: And also if I can ask you, you say because of the impact it has had on his occupational activities. By impact do you mean that he could not perform all the strenuous duties of a fire fighter?

A: Yes. See the AMA Guidelines are limitations which are generic, and then disability is a function of what the job duties are. For example, if you or I, doing the work that we do, if we were to lose our little finger, we would have a 10 percent limitation of our hand, but you and I would have no disability. If we were concert piano players or a guitar player then we would have a hundred percent disability.

So as a fire fighter these limitations preclude him from being a fire fighter completely and preclude him from using his hand for occupational purposes completely for anything more than sedentary, non-repetitive activities.

Q: Are you aware that under the Workers' Compensation Act for a specific loss, it takes more into account than just his occupational activities and what he can do and it also takes into account his daily life activities and hygiene activities in that?

A: Yes. I try not to know what it all means, but I just try to describe what I think he can do. Ordinarily I don't even use that word specific [sic], I usually just say loss for all intent [sic] and purposes.

(Reproduced Record at 139a–141a.)

■ Here, Dr. Jaeger's testimony supports only that Claimant cannot perform his previous job as a firefighter, an occupational loss, and that he had not lost the use of his right hand for all practical intents and purposes. Moreover, all of the medical testimony supported that Claimant had some amount of functional use of his right arm, including Dr. Jaeger's testimony that Claimant could lift anything less than 20 pounds, and that Claimant most likely performed some tasks with his left hand because it was easier to do so, not because he was incapable of using his right arm.

Accordingly, because there was no medical testimony that Claimant lost the use of his right hand for all practical intents and purposes,[8] the Board's decision affirming the WCJ is also affirmed.

### ORDER

AND NOW, this *19th* day of *November*, 2002, the decision of the Workers' Compensation Appeal Board at No. A01–0351, dated April 29, 2002, is affirmed.

---

**7.** Earlier in cross-examination, Dr. Jaeger testified that when he stated that Claimant has a specific loss to the right hand and arm, he meant that he had a specific loss to the wrist. Reproduced Record at 136a–137a.

**8.** While it was not necessary that the medical expert used the "magic words" opining that Claimant had lost the use of his right hand for all practical intents and purposes, use of those words did support that conclusion. *Cress v. Workmen's Compensation Appeal Board (Tri–State Envelope Co.)*, 114 Pa. Cmwlth.363, 538 A.2d 1382, 1384 (1988).