Jason JACOBI, Petitioner

v.

**WORKERS' COMPENSATION
APPEAL BOARD (WAWA,
INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 7, 2007.

Decided Feb. 12, 2008.

George Martin, Philadelphia, for petitioner.

William L. Foley, Jr., Media, for respondent.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Jason Jacobi (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that reversed the Workers' Compensation Judge's (WCJ) decision granting Claimant's petition to review compensation benefits (review petition). The Board concluded that the WCJ erred in determining that Claimant's work injury included a specific loss of his right middle finger [1] because Claimant did not offer medical evidence that he had permanently lost the use of that finger for all practical intents and purposes. Finding no error in the Board's holding, we affirm.

Claimant is employed by Wawa, Inc. (Employer) as a truck driver/deliverer. On September 13, 2004, Claimant sustained a work injury when his fingers were smashed by a freight elevator door. Em-

---

[1]. "A specific loss is either (1) the loss of a body part by amputation or (2) the permanent loss of use of an injured body part for all practical intents and purposes." *Schemmer v. Workers' Compensation Appeal Board (U.S. Steel)*, 833 A.2d 276, 279 n. 5 (Pa.Cmwlth. 2003).

ployer issued a Notice of Compensation Payable (NCP) describing the injury as a crush injury to Claimant's right index and middle fingers and providing for payment of total disability benefits as of September 14, 2004. Jacobi Deposition, Exhibit 1.[2] Claimant's benefits were suspended as of November 8, 2004, based on his return to work, but were reinstated as of December 9, 2004, when his total disability recurred. The parties executed a Supplemental Agreement providing for a modification of benefits as of January 10, 2005, based on Claimant's return to work. Finally, Claimant's benefits were suspended based on his return to work without a wage loss as of November 14, 2005, and they remain suspended. Jacobi Deposition, Exhibit 5.

On December 9, 2005, Claimant filed a review petition seeking a determination that he sustained a specific loss of his right middle finger as of September 15, 2005, the day he underwent surgery. Employer filed an answer denying that Claimant suffered a specific loss.

Claimant testified in support of his petition by deposition on March 7, 2006, and at a hearing on June 20, 2006. He explained that his job with Employer requires driving a truck and delivering milk to various locations. As he was delivering milk on the morning of September 13, 2004, his right index finger and right middle finger were crushed in a freight elevator door. Claimant has undergone three surgeries on his right middle finger. During the last surgery, the joint closest to the tip of the finger was fused and a metal screw was inserted from that joint to the finger tip.

Claimant has returned to his regular job. However, Claimant is right-handed and the work injury has impacted his ability to perform certain activities, both in and out of work. Claimant testified that he

has lost strength in his middle finger, causing him to use his index and ring fingers to compensate. Claimant cannot perform activities that require grip strength, such as weight lifting and playing softball. Claimant also testified that he has pain whenever he uses his middle finger. Because of the pain, he does not use that finger when he writes, types on a keyboard or brushes his teeth. With regard to his job, Claimant explained that he cannot use his middle finger when he uses a hook to drag crates of milk off the truck and into the stores; he does not use his middle finger when he uses his right hand to shift gears in the truck; and he experiences a great deal of pain whenever he is exposed to cold temperatures, such as when he spends time in the refrigerated area where the milk is stored, because the metal screw in his finger causes his finger to hurt when it becomes cold.

Despite the limitations, there are things that Claimant can do. Although he cannot touch his middle finger to his palm, Claimant is able to touch his middle finger to his thumb. Claimant explained that he can differentiate between things that are hot or cold and smooth or rough with his finger. He is also capable of gripping small items between his middle finger and his thumb and is able to use his finger for activities such as operating a zipper, tying his shoes, shaving and tying a necktie.

Claimant presented medical records from A. Lee Osterman, M.D., who treated Claimant for his finger injury. Dr. Osterman diagnosed Claimant with an intra-articular distal phalangeal joint fracture in the right long finger with radial and collateral ligament rupture. On December 9, 2004, Dr. Osterman performed surgery and placed a pin in Claimant's finger. On

---

**2.** The NCP and other Bureau documents establishing Claimant's disability status are found in the certified record but are not included in the reproduced record.

December 22, 2004, Dr. Osterman's partner, Randall Culp, M.D., performed a second surgery consisting of irrigation and debridement of the injured area, because Claimant had developed an infection at the pin site. As of January 3, 2005, the pin had been removed and Dr. Osterman diagnosed Claimant with significant arthritic changes. At that time, Dr. Osterman listed Claimant's prognosis as guarded and opined that he may require a fusion of the joint, stating specifically that Claimant "certainly will have some residual permanent impairment of this relative to motion." Reproduced Record at 45a. (R.R. ——).

Dr. Osterman continued to see Claimant. As of July 28, 2005, the diagnosis was traumatic arthritis in the distal interphalangeal joint of the right middle finger. Fusion surgery was scheduled in an attempt to reduce Claimant's pain, and Dr. Osterman performed the third surgery on September 15, 2005. Dr. Osterman saw Claimant for several follow-up visits and opined that he was progressing well. Dr. Osterman's final medical report is dated November 3, 2005, when he examined Claimant's finger. Dr. Osterman found that the joint showed excellent alignment and that it was well healed and stable. The screw inserted in the surgery was in place but had not yet fused; however, Dr. Osterman noted that fusions can take up to six months. Dr. Osterman felt that Claimant "has done very well," noting, among other things, that Claimant had "excellent tendon gliding and grip strength is already 85/110." R.R. 57a. Dr. Osterman released Claimant to full-duty work without restrictions effective November 14, 2005, with plans to see Claimant again in January 2006.

Employer presented a January 5, 2006, report from Dr. Osterman describing Claimant's condition. Dr. Osterman noted that Claimant "has done extremely well" after his fusion surgery, and was back to his full-duty work without restrictions. R.R. 69a. Dr. Osterman reported that the joint was stable with no tenderness at the fusion site and only occasional pain, described as aching with cold weather. Dr. Osterman examined Claimant's fingers and found that they all demonstrated full extension and all touched to the distal palmar crease except for the right middle finger which came to within 1.5 centimeters.

Employer also submitted into evidence a June 14, 2006, medical report from Gregory T. Tadduni, M.D., who performed an independent medical examination of Claimant on May 1, 2006. Based on Claimant's history, a physical examination and a review of medical records, Dr. Tadduni explained that the fusion surgery was appropriate, but the fusion failed to heal and Claimant would need additional surgery. Dr. Tadduni stated that it was premature to determine whether Claimant sustained a specific loss of the middle finger because he still needed further surgery. However, Dr. Tadduni opined that, regardless of whether Claimant underwent further surgery, it was not reasonable to believe that Claimant lost the use of his middle finger for all practical intents and purposes, or that he even lost the use of half of his middle finger.

■ The WCJ granted Claimant's review petition, concluding that Claimant met his burden of proving that he sustained a specific loss of his right middle finger. The WCJ credited the testimony of Claimant and Dr. Osterman.[3] The WCJ

---

**3.** The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Tho-*

credited Dr. Taddunis opinion in large part but specifically rejected his conclusion that Claimant has not lost the use of his right middle finger for all practical intents and purposes, because the doctor did not consider Claimants inability to use his finger. The WCJ stated that the only thing at issue is [C]laimants ability or inability to use the finger—a determination that is best made based on the injured workers testimony. WCJ Decision, 10/5/06, at 3; Finding of Fact 8. The WCJ found that, based on the evidence as a whole, Claimant suffered a loss of use of his right middle finger for all practical intents and purposes. The WCJ stressed that he was persuaded by Claimants testimony regarding his inability to use this finger to perform his job duties and a majority of his activities of daily living. WCJ Decision, 10/5/06, at 3; Finding of Fact 10.

■ Employer appealed, and the Board reversed. In doing so, the Board determined that Claimant failed to meet his burden of proving that he suffered a specific loss, because the medical evidence, which was required in order for Claimant to meet his burden of proof, did not establish that Claimant lost the use of his right middle finger for all practical intents and purposes and that any loss was permanent. Claimant now petitions for this Courts review.[4]

On appeal, Claimant argues that the Board erred in reversing the WCJ's decision. Specifically, Claimant asserts that the evidence credited by the WCJ showed that Claimant lost the use of his right middle finger and that the WCJ applied the correct legal standard in awarding specific loss benefits. Claimant argues that, in reversing the WCJ, the Board wrongly usurped his role as fact finder and applied the wrong legal standard.

■ We begin with a review of the principles regarding specific loss benefits. Section 306(c) of the Workers' Compensation Act (Act)[5] provides that compensation shall be awarded where a work-related injury results in the loss of a finger. It states as follows:

For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:

\* \* \*

(11) For the loss of a second finger, sixty-six and two-thirds percentum of wages during forty weeks.

77 P.S. § 513(11).[6]

■ When a claimant alleges that his injury has resolved into a specific loss, he has the burden of proving that he has permanently lost the use of his injured body part for all practical intents and purposes. *Crews v. Workers' Compensation Appeal Board (Ripkin)*, 767 A.2d 626, 630 (Pa.Cmwlth.2001). A specific loss requires more than just limitations upon an injured worker's occupational activities; a loss of

---

roughgood, Inc.), 666 A.2d 383, 385 (Pa. Cmwlth.1995).

4. This Court's scope and standard of review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

5. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513.

6. When a body part becomes useless, it is treated under the Act as though it were physically missing. *Burkey v. Workmen's Compensation Appeal Board (North American Rockwell)*, 80 Pa.Cmwlth. 540, 471 A.2d 1325, 1327 (1984).

use for all practical intents and purposes requires a more crippling injury than one that results in a loss of use for occupational purposes. *Wise v. Workers' Compensation Appeal Board (City of Philadelphia)*, 810 A.2d 750, 753 (Pa.Cmwlth.2002). However, it is not necessary that the injured body part be one hundred percent useless in order for the loss of use to qualify as being for all practical intents and purposes. *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Palmer)*, 659 A.2d 12, 16 (Pa.Cmwlth. 1995). Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ. *Id.* at 16 n. 12.[7] Whether the loss is for all practical intents and purposes is a question of law. *Id.*

 Claimant contends that the Board erred in determining that his medical evidence was inadequate to support a finding of specific loss when the law, in cases such as *Bakula v. Workmen's Compensation Appeal Board (Budd Company)*, 134 Pa. Cmwlth. 37, 577 A.2d 961 (1990), provides that a claimant's testimony regarding his limitations is highly relevant to a determination of specific loss.[8] Claimant asserts that Dr. Osterman's opinion that he will have some permanent impairment, along with Claimant's testimony, is sufficient to meet his burden of proving a specific loss.

Employer counters that the WCJ's decision is not supported by substantial, competent evidence because Claimant did not submit any medical evidence that he permanently lost the use of his finger for all practical intents and purposes. Indeed, Employer notes that Claimant's medical evidence actually contradicts Claimant's testimony concerning his limitations.

After thoroughly reviewing the evidence presented in this case, we conclude that Claimant's evidence was insufficient to establish a permanent loss of use for all practical intents and purposes. It is true that Claimant credibly testified to numerous limitations and problems that he has in using his right middle finger. However, his medical evidence does not support his contention that he permanently lost the use of his finger for all practical intents and purposes. Although Dr. Osterman opined on January 3, 2005, that Claimant could require a fusion and that Claimant "certainly will have some residual permanent impairment of this relative to motion," Dr. Osterman gave no opinion as to any degree of impairment. More importantly, this opinion was rendered many months *before* Claimant actually underwent fusion surgery. After Claimant underwent fusion surgery on September 15, 2005, which is the date he is alleging he sustained his specific loss, there is no medical evidence that Claimant permanently lost the use of his finger for all practical intents and purposes. In fact, Dr. Osterman subsequently released Claimant to return to his regular job without restrictions and opined that Claimant had only occasional pain and was doing very well. Because Dr. Osterman's testimony directly

7. The WCJ's findings of fact will not be disturbed as long as they are supported by substantial, competent evidence in the record. *Supervalu, Inc. v. Workers' Compensation Appeal Board (Bowser)*, 755 A.2d 715, 720 (Pa. Cmwlth.2000). Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth. 382, 539 A.2d 11, 14 (1988).

8. In *Bakula*, this Court discussed both the medical evidence and the claimant's testimony concerning a loss of use of his finger, and remanded for further findings because the WCJ had made a mistake as to the contents of the doctor's report.

contradicts Claimant's testimony, it cannot support a finding of permanent loss of a finger.

Claimant points to his own testimony regarding his limitations as support for a determination of specific loss. He correctly points out that in *Bakula* this Court explained that "courts have often looked to the claimant's testimony and/or the [WCJ's] personal observation of the injured extremity *as further support* of a finding of loss of use." *Bakula*, 577 A.2d at 964 (emphasis added). However, *Bakula* does not state that a Claimant's testimony alone will support a finding of specific loss.

 The case law does not specify what evidence is required in order to prove a permanent loss of use for all practical intents and purposes.[9] Nevertheless, it is clear that a claimant must present medical evidence in order to prove that his loss of use is permanent and for all practical intents and purposes. *See, e.g., Wise v. Workers' Compensation Appeal Board (City of Philadelphia)*, 810 A.2d 750 (Pa. Cmwlth.2002) (affirming the denial of a claim petition because there was no medical testimony that the claimant lost the use of his hand for all practical intents and

purposes); *Pioneer Machine & Tool Co. v. Workmen's Compensation Appeal Board (Willis)*, 145 Pa.Cmwlth. 48, 602 A.2d 442, 445 (1992) (explaining that "*[i]n addition to medical testimony,* the [WCJ] must consider the testimony of claimant as to what he or she can or cannot do with the injured body parts in question") (emphasis added). In *Bakula,* this Court stated that the claimant's testimony regarding loss of use is relevant as "further support" for a finding of specific loss. Stated otherwise, competent medical evidence of permanent loss of use for all practical intents and purposes must be presented before "further support" in the form of a claimant's testimony can be considered.[10]

Claimant failed to present any medical evidence that could reasonably support a finding of specific loss.[11] Therefore, despite Claimant's credible testimony that he has lost function in his right middle finger, his evidence was insufficient to establish a permanent loss of use for all practical intents and purposes. The Board, therefore, did not err in reversing the WCJ's decision granting Claimant's review petition.[12]

For these reasons, the Board's order is affirmed.

---

**9.** This Court has previously noted that "it is not clear what type of evidence is sufficient to support a specific loss." *Bakula*, 577 A.2d at 964.

**10.** *See* DAVID B. TORREY AND ANDREW E. GREENBERG, PENNSYLVANIA WORKERS' COMPENSATION LAW AND PRACTICE §§ 5:144, 5:145 (2002) (explaining that a claimant's explanation of what he can and cannot do with his injured extremity is very important but that medical evidence must also be considered by the fact finder, especially on the issue of the permanency of the loss of use).

**11.** Claimant also cites to *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Hopiak)*, 127 Pa.Cmwlth. 553, 562 A.2d 419 (1989). However, in that case benefits for

loss of use of the claimant's thumb were awarded based on the testimony of the claimant and his medical expert.

**12.** Claimant contends that the Board's decision was based on an "antiquated legal standard" inasmuch as the Board relied on a Superior Court case from the 1940's, *Vince v. Allegheny Pittsburgh Coal Company*, 153 Pa.Super. 333, 33 A.2d 788 (1943), wherein the Superior Court required definite information from the operating surgeon regarding the extent of an amputation of the claimant's thumb in order to establish a specific loss. Although the Board relied on an old case, we have already determined that Claimant failed to meet his burden of proof under more recent cases such as *Bakula* and *Wise.*

## ORDER

AND NOW, this 12th day of February, 2008, the order of the Workers' Compensation Appeal Board dated May 25, 2007, in the above captioned matter is hereby AFFIRMED.