IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Kemps, : 
           Petitioner : 
  : 
  : 
   v. : No. 1099 C.D. 2020
  : SUBMITTED: March 5, 2021
Kristina Steets (Workers' Compensation : 
Appeal Board), : 
           Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED: May 24, 2021

John Kemps (Employer) petitions this Court for review of the October 8, 2020 order of the Workers' Compensation Appeal Board (Board), affirming the decision of a workers' compensation judge (WCJ), which granted Kristina Steets (Claimant) specific loss benefits pursuant to Section 306(c)(3) of the Workers' Compensation Act (Act).[1] The issue before this Court is whether the WCJ's finding that Claimant suffered the specific loss of her arms was supported by substantial, competent evidence. After careful review, we affirm.

## I. Background

Claimant suffered a work injury on June 30, 2017, following an explosion at Employer's fireworks company. Certified Record (C.R.), Item No. 2. Employer

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513(3). Section 306(c)(3) of the Act established a schedule of compensation for "all disability resulting from permanent injuries" of various classes, including subsection (c), which provides "[f]or the loss of an arm, sixty-six and two thirds per centum of wages during four hundred ten weeks." 77 P.S. § 513(3).

recognized the work injury, described as an amputation involving multiple body parts, through issuance of a Notice of Compensation Payable (NCP). C.R., Item No. 31. Claimant filed claim and review petitions on October 25, 2018, seeking a correction to the description of her work injury to include the following diagnoses: traumatic brain injury, septic shock, respiratory failure, dysphagia, quadriparesis, bowel and bladder incontinence, and the loss of use of both arms. *Id.*, Item Nos. 2, 5. Employer denied the allegations in answers filed October 26, 2018. *Id.*, Item Nos. 4, 7.

In support of her petitions, Claimant presented the deposition testimony of Robert Mauthe, M.D., who conducted an independent medical examination (IME) of Claimant on October 22, 2018. Employer presented the deposition testimony of its medical expert, Scott Naftulin, D.O., who performed an IME of Claimant on January 8, 2019.

Although Dr. Mauthe did not provide any treatment for Claimant's work injury, he previously treated her in 2010 and 2012 for complex regional pain syndrome (CRPS) involving the "left upper extremity." Reproduced Record (R.R.) at 139a. Dr. Mauthe's IME consisted of a physical examination and a review of Claimant's medical records. R.R. at 119a. He related that the injuries to Claimant's left hand and arm included fractures of her forearm and wrist, a dislocation of the wrist, amputations of the second and third fingers, and a partial amputation of her fifth (pinky) finger. *Id.* at 122a. Dr. Mauthe understood that the damage to Claimant's right side included a dislocated wrist, a fracture to her hand, and an amputation of her thumb. *Id.* Claimant developed septic shock during her initial treatment, resulting in a brain injury which rendered Claimant a quadriplegic. *Id.* at 122a-23a. She is incontinent, receives oxygen through a tracheostomy tube, and is

2

fed by means of a feeding tube. *Id.* at 123a. Although Dr. Mauthe was advised that Claimant might be able to communicate with her right eye and the assistance of a "laser pointer,"[2] she was non-communicative during Dr. Mauthe's examination. *Id.* Dr. Mauthe reported that Claimant could not perform any activities of daily living, although he acknowledged during cross-examination that he was not able to assess Claimant's active range of motion or take a verbal history from her. *Id.* at 124a, 135a.

Dr. Mauthe described Claimant's hands as "markedly damaged," given that several digits were amputated from her left hand and "the right doesn't have a thumb." *Id.* at 124a. He opined that, even if Claimant had not suffered a brain injury, Claimant would not be able to use her hands due to the multiple amputations and contractures, and Claimant's upper extremities were "flippers." *Id.* at 124a-25a. Dr. Mauthe recognized that Claimant still had hands; however, she "doesn't have the digits," and she suffered a fracture and dislocation of her left wrist. *Id.* at 130a. As to the right hand, Dr. Mauthe reiterated that she had no thumb, which is required to perform opposition and "use the hand." *Id.* at 131a-32a. Although Claimant still had the second, third, and fourth digits of her right hand, Dr. Mauthe stated that they "don't work." *Id.* at 131a. Given the lack of fine motor skills in Claimant's hands, she could not write, button, or feed herself, and Dr. Mauthe opined that she had lost the use of her hands "for all practical intents and purposes." *Id.* at 129a.

Dr. Mauthe considered the injuries to Claimant's hands to be separate and apart from her brain injury, which he explained had disconnected the electrical impulses that allowed Claimant's arms to function. *Id.* at 130a, 133a. As to

---

[2] Claimant suffered from blindness in her left eye, a condition which preexisted her work injury. Notes of Testimony (N.T.) , 2/11/19, at 17.

Claimant's arms, Dr. Mauthe noted that the "purpose of the shoulder and arm is to place the hand in space." *Id.* at 130a. He opined that, without hands, Claimant had no functional use of either upper extremity. *Id.* Dr. Mauthe related Claimant's brain injury to the June 30, 2017 work injury. *Id.* at 129a. He did not believe Claimant's condition would ever improve and she would remain dependent for the rest of her life. *Id.* at 133a. In his written IME report, Dr. Mauthe opined that the June 30, 2017 work injury caused Claimant the "loss of use of both arms for all practical intents and purposes." *Id.* at 133a, 140a.

During a November 19, 2018 hearing before the WCJ, Employer's counsel acknowledged that the amputations were injuries separate and apart from Claimant's brain injury. C.R., Item No. 13, WCJ Hearing, 11/19/18, at 10. At a subsequent hearing before the WCJ held on January 2, 2019, Claimant's counsel introduced several photographs of Claimant. R.R. at 69a-71a. Claimant's mother, Linda Steets, testified that the photographs accurately represented Claimant's present condition. *Id.* at 78a. These photos demonstrate that Claimant still has a thumb on her right hand, but her pinky finger is missing. *Id.* at 104a-06a. Claimant's left hand is missing a thumb and three other digits. *Id.* at 107a-09a. The remaining digit is partially amputated. *Id.*

Dr. Naftulin testified by deposition on April 22, 2019, that he reviewed Claimant's medical records, including Dr. Mauthe's IME report, and conducted a physical examination on January 8, 2019. *Id.* at 194a-200a. He related that Claimant had various conditions which preexisted the June 30, 2017 work injury, including CRPS in the upper left extremity. *Id.* at 197a, 199a. Dr. Naftulin related that the cause of Claimant's septic shock was "most likely" due to an infection, but the exact cause was never clearly determined. *Id.* at 152a-53a. Claimant's medical records

4

documented a "completely mangled" left hand, with multiple open fractures. *Id.* at 163a, 197a. Her right hand suffered from multiple fractures in the second, third, and fourth fingers, and an amputation of her pinky finger. *Id.* at 164a, 197a. Claimant also suffered second degree burns to her upper left extremity, and scattered abrasions and lacerations to her torso, abdomen, and extremities. *Id.*

Dr. Naftulin noted that Claimant was unable to perform any type of active range of motion during the physical examination, and she was non-communicative throughout. *Id.* at 169a-70a. With regard to Claimant's passive range of motion, Dr. Naftulin reported that Claimant had full range of motion in her right elbow but she had limitations with her right wrist and fingers. *Id.* at 170a-71a. Claimant's range of motion in both shoulders was limited to 90 degrees, with very little internal and external rotation on the right and "essentially no" internal or external rotation on the left. *Id.* at 171a, 198a. Dr. Naftulin observed some limitations in Claimant's left elbow range of motion. *Id.* Her left wrist and the residual digit on her left hand had no range of motion. *Id.* at 172a. The back of Claimant's right hand was scarred and discolored and the webbing between Claimant's second, third, and fourth right digits was likewise scarred. *Id.*

Dr. Naftulin opined that Claimant's work injuries left her with limitations in the use of her hands. *Id.* at 177a. More specifically, Claimant had "very limited use of the left hand." *Id.* at 177a, 199a. Dr. Naftulin reported that Claimant had "more preserved function" with her right hand, but she still had limitations on the use of that hand in regards to repetitive activity, fine manipulation, and grasp. *Id.* Notwithstanding the damage caused by the explosion, Dr. Naftulin felt that Claimant's brain injury was the "primary source" of her multiple impairments, and, absent the brain injury, Claimant would have the use of her arms and hands. *Id.* at

5

178a, 184a, 187a, 199a. Dr. Naftulin acknowledged that Claimant's brain injury developed subsequent to her work injury, and it occurred during the course of her treatment for the work injury. *Id.* at 188a-89a. Nevertheless, Dr. Naftulin could not conclusively relate Claimant's brain injury to the work injury, as "no clear cause" for the brain injury had been identified. *Id.* at 189a. Dr. Naftulin understood that Claimant had a history of CRPS, but he conceded that it was unclear how much the CRPS limited her use of her upper extremities and he had not reviewed any records which suggested Claimant could not use her upper extremities prior to the work injury. *Id.* at 183a.

The WCJ granted Claimant's claim and review petitions in a decision circulated on October 7, 2019. In his findings of fact (F.F.), the WCJ noted the acknowledgment by Employer's counsel that Claimant's amputations were injuries separate and apart from her brain injury. C.R., Item No. 8, WCJ Decision, F.F. No. 4. The WCJ credited Ms. Steets's testimony that the photographs of Claimant accurately represented her condition. F.F. No. 24. Dr. Mauthe was found more credible than Dr. Naftulin to the extent their testimonies differed. F.F. No. 25. He credited Dr. Mauthe's explanation of the relationship between Claimant's brain injury and the traumatic injuries she suffered as a result of the June 30, 2017 explosion. *Id.* The WCJ noted that Dr. Naftulin did not refute Dr. Mauthe's testimony, and Dr. Naftulin admitted that Claimant's brain injury occurred subsequent to, and during the treatment of, her work injury. *Id.* In spite of this admission, Dr. Naftulin could not offer an opinion as to whether those problems were related to the work injury, and he opined that the cause of her brain injury had yet to be determined. *Id.*

6

The WCJ recognized that Dr. Mauthe misspoke during his testimony and identified that Claimant's right thumb had been amputated. F.F. No. 27. However, Dr. Mauthe correctly testified that her right pinky was missing, and the WCJ credited his testimony that the second, third, and fourth digits of Claimant's right hand did not work. *Id.* Dr. Mauthe credibly explained that, even had Claimant not suffered a brain injury, she would have no fine motor skills with her hands and she would be unable to write, button, or feed herself. *Id.* Therefore, Claimant lost the use of her hands for all practical intents and purposes. *Id.*

The WCJ credited Dr. Mauthe's testimony that, although Claimant's forearms and shoulders were intact, her arms had no functional use. *Id.* Based on the credited testimony of Dr. Mauthe, and the photographs depicting Claimant's injuries, the WCJ discredited Dr. Naftulin's opinion that, absent the brain injury, Claimant would have the use of her arms and hands. *Id.* Accordingly, the WCJ found that Claimant's work injury caused the permanent loss of both of her arms for all practical intents and purposes. *Id.* The WCJ amended Claimant's work injury to include traumatic brain injury and anoxic encephalopathy with significant cognitive impairment, septic shock, respiratory failure, dysphagia, quadriparesis, bowel and bladder incontinence, and loss of the use of both arms. *Id.* The WCJ accepted Dr. Mauthe's testimony that Claimant's impairment is permanent. F.F. No. 26. Once Claimant's receipt of total disability benefits ceased, she would be entitled to specific loss benefits under Section 306(c)(3) and 306(c)(25) of the Act.[3] F.F. Nos. 28, 32.

---

[3] 77 P.S. § 513(3), (25). Pursuant to Section 306(c)(3) of the Act, a claimant is entitled to 66 and 2/3% of wages for 410 weeks for the specific loss of an arm. 77 P.S. § 513(3). A claimant may additionally receive compensation for the healing period related to the specific loss. Section 306(c)(25) provides for a 20-week healing period for the loss of an arm. 77 P.S. § 513(25). In the event a claimant has suffered additional injuries that are separate from the specific loss, Section **(Footnote continued on next page…)**

7

Employer appealed to the Board, challenging Claimant's entitlement to specific loss benefits. C.R., Item No. 9. Employer argued that Claimant's loss of the use of her arms was caused by her brain injury, and Dr. Mauthe's testimony that the June 30, 2017 explosion caused the specific loss of Claimant's use of her arms was incompetent and based on an inaccurate factual foundation, as he incorrectly testified that Claimant's right thumb had been amputated. *Id.* The Board affirmed the WCJ. It rejected Employer's argument that Claimant was not entitled to specific loss benefits for both arms, as Dr. Mauthe unequivocally testified that Claimant had lost the use of both of her arms, and Dr. Naftulin concurred with this opinion. *Id.*, Item No. 11. The Board also concluded that the WCJ did not err in awarding Claimant specific loss benefits in addition to total disability benefits, as Claimant suffered multiple fractures and amputations to her hands and arms, and these injuries were separate and apart from her brain injury. *Id.* This appeal followed.[4]

The sole issue before this Court is whether the WCJ erred in awarding specific loss benefits to Claimant for the loss of use of both arms.

## II. Discussion

In a claim petition, the claimant bears the burden of proving her injury was related to, and arose in the course of, her employment. *Wachs v. Workers' Comp. Appeal Bd. (Am. Off. Sys.)*, 884 A.2d 858, 862 (Pa. 2005). Generally, a claimant

---

306(d) provides for the payment of specific loss benefits upon expiration of the claimant's period of total temporary disability. 77 P.S. § 513.

[4] This Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, constitutional rights were violated, or errors of law were committed. *Borough of Heidelberg v. Workers' Comp. Appeal Bd. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). Where the issue presented involves a question of law, our standard of review is *de novo* and our scope of review is plenary. *Id.*

8

awarded specific loss benefits under Section 306(c) of the Act is not otherwise entitled to workers' compensation benefits. *Pocono Mountain. Sch. Dist. v. Workers' Comp. Appeal Bd. (Easterling)*, 113 A.3d 909, 914 (Pa. Cmwlth. 2015). An exception to this general rule provides that a claimant may also receive benefits for injuries that are separate and distinct from those that flow from the specific loss injury. *Id.*; Section 306(d) of the Act, 77 P.S. § 513. A claimant alleging that her work injury resolved into a specific loss bears the burden of proving a permanent loss of the use of the injured body part for all practical intents and purposes. *Crews v. Workers' Comp. Appeal Bd. (Ripkin)*, 767 A.2d 626, 630 (Pa. Cmwlth. 2001).

Employer challenges the WCJ's award of specific loss benefits on several grounds, which we will address in turn. First, Employer argues that Dr. Mauthe's testimony regarding the extent of damage to Claimant's right hand, and his opinion that she had lost the use of her right arm, was incompetent, as it was based on an inaccurate medical history. Specifically, Dr. Mauthe incorrectly testified that Claimant's right thumb was amputated and, as a result, she was unable to perform the opposition required for fine motor skills. Employer notes that the photographs submitted into evidence clearly demonstrate that Claimant's right thumb was not amputated. Therefore, Employer argues that Dr. Mauthe's testimony regarding Claimant's loss of the use of her right arm is incompetent as a matter of law.

A medical expert's testimony is incompetent if it is based on an incomplete and inaccurate medical history. *Sw. Airlines/Cambridge Integrated Serv. v. Workers' Comp. Appeal Bd. (King)*, 985 A.2d 280, 286-87 (Pa. Cmwlth. 2009). However, "[a] medical expert's opinion is not rendered incompetent unless it is *solely* based on inaccurate or false information." *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001)

9

(emphasis in original). The opinion of a medical expert must be viewed *as a whole. Id.* Inaccurate information will not defeat an expert's opinion unless it is dependent on those inaccuracies. *Id.*

Employer is correct that Dr. Mauthe stated during his deposition testimony that Claimant's right thumb was missing, and he opined that a thumb is required to perform opposition, which is "required in order to use the hand."[5] Mauthe Dep., 2/11/19, at 26. Critically, he also testified as follows:

> The right doesn't have a thumb, so you know, even if she didn't have the brain injury, she wouldn't be able to hold anything or write or use her hands, because of the multiple amputations and the contractures.

Mauthe Dep., 2/11/19, at 18.

He later stated the following regarding Claimant's right hand:

> Right was not as bad [as the left hand]. I mean, she lost the thumb, and the thumb, of course, is required for opposition. So without a thumb, you can't oppose the digits, so without being able to perform opposition, you lose fine motor skill.

*Id.* at 25.

Clearly, Dr. Mauthe's testimony regarding Claimant's right thumb was inaccurate, and his misapprehension of this fact may well have tainted his opinion that Claimant could not perform opposition with her right hand. His opinion that Claimant had lost the use of her right hand, however, was not solely based on his

---

[5] Employer does not appear to challenge Dr. Mauthe's testimony that Claimant lost the use of her left hand. However, to the extent Employer's appeal could be so characterized, the record amply supports a finding that Claimant lost the use of her left hand for all intents and purposes, as Dr. Mauthe correctly testified that four digits on that hand were amputated, including the thumb, and the remaining digit was partially amputated. This testimony is corroborated by the photographs Claimant introduced, and Dr. Naftulin's testimony that Claimant's left wrist and residual digit had no passive range of motion.

10

mistaken belief that Claimant had no right thumb and could not perform opposition. Moreover, it is not necessary that the injured body part be 100% useless for the injury to qualify as a loss for all practical intents and purposes. *Jacobi v. Workers' Comp. Appeal Bd. (Wawa, Inc)*, 942 A.2d 263, 267-68 (Pa. Cmwlth. 2008). As the WCJ noted, Dr. Mauthe correctly identified that Claimant was missing her pinky finger, and his medical opinion also considered the contractures[6] in Claimant's second, third, and fourth digits, which Dr. Mauthe stated "just don't work." R.R. at 131a. In light of this additional testimony, which Employer did not refute,[7] we will not dismiss as incompetent Dr. Mauthe's opinion that Claimant lost the use of her right hand.

Next, Employer argues that the WCJ erred in awarding Claimant benefits for the loss of use of her arms. Employer notes that the duration of a specific loss benefit depends on the disability at issue. Section 306(c)(1) of the Act, for example, provides a benefit of 335 weeks for the loss of a hand,[8] whereas the benefit for the loss of an arm is 410 weeks, per Section 306(c)(3) of the Act.[9] Employer contends that Dr. Mauthe ignored this distinction when he opined that Claimant's loss of the use of her hands rendered her arms essentially useless. Moreover, Employer submits that any loss Claimant suffered with regard to the use of her arms is not an injury

---

[6] A contracture is defined as "a permanent shortening (as of muscle, tendon, or scar tissue) producing deformity or distortion." *Contracture*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/contracture (last visited May 21, 2021).

[7] In fact, Employer's own expert, Dr. Naftulin, acknowledged that Claimant had limitations in the use of her right hand with regard to repetitive activity, fine manipulation, and grasp.

[8] 77 P.S. § 513(1).

[9] 77 P.S. § 513(3).

separate and apart from her brain injury as, but for the brain injury, Claimant would still have the use of her arms.

A specific loss is either (1) the loss of a body part by amputation, or (2) the permanent loss of use of an injured body part for all practical intents and purposes. *Pocono Mountain Sch. Dist.*, 113 A.3d at 913. While a specific loss requires more than just limitations upon an injured worker's occupational activities, it is not necessary that the injured body part be 100% useless for the injury to qualify as a loss for all practical intents and purposes. *Jacobi*, 942 A.2d at 267-68. Our case law does not specify what evidence is required to prove a loss is permanent for all intents and purposes. *Id.* at 269. Such a determination hinges on the findings of fact in each case, including those regarding credibility, the degree of the injury, and the degree to which a claimant may continue to use the body part. *Miller v. Workers' Comp. Appeal Bd. (Wal-Mart)*, 44 A.3d 726, 734 (Pa. Cmwlth. 2012). Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ. *Jacobi*, 942 A.2d at 268. Whether the loss is for all practical intents and purposes is an issue of law. *Id.*

Employer's argument has some merit, as the WCJ's finding that Claimant lost the use of her arms was primarily based on Dr. Mauthe's opinion that the "purpose of the shoulder and arm is to place the hand in space[,]" and, without hands, Claimant had no functional use of her upper extremities. Mauthe Dep., 2/11/19, at 24. Clearly, the General Assembly distinguished the loss of a hand from the loss of an arm and chose to assign a greater benefit in the event a claimant lost the latter extremity for all practical intents and purposes. Therefore, setting aside for the moment the injuries to Claimant's hands, we look to the evidence which relates to the function remaining in Claimant's arms.

12

Dr. Mauthe and Dr. Naftulin both testified that Claimant had no active range of motion, which condition was clearly related to her brain injury. Dr. Naftulin, whose testimony was only discredited to the extent it conflicted with that of Dr. Mauthe, documented several limitations with Claimant's passive range of motion. While Claimant had full range of motion in her right elbow, it was more limited in her right wrist. Dr. Naftulin also observed limitations in Claimant's left elbow range of motion and she had no range of motion in her left wrist. The range of motion in Claimant's shoulders was limited to 90 degrees, with very little internal and external rotation on the right and "essentially no" internal or external rotation on the left. R.R. at 171a, 198a. Dr. Naftulin acknowledged that, prior to the work injury, Claimant was able to use both of her upper extremities. Although Dr. Naftulin opined that Claimant's brain injury was the reason she had lost the use of her arms, he did agree that she had lost the use of her arms and hands for all practical intents and purposes. Dr. Naftulin conceded that it was not clear if Claimant's preexisting CRPS limited her use of her upper extremities and he had not reviewed any records which suggested Claimant could not use her upper extremities prior to the work injury. Dr. Mauthe opined that Claimant's condition is permanent and will not improve.

As iterated herein, Claimant's arms need not be 100% useless before her loss of their use qualifies as a loss for all practical intents and purposes. *Jacobi*, 942 A.2d at 268. Therefore, the fact that Claimant's forearms and shoulders remain intact do not forestall a finding that she has suffered such a loss.

In *Allegheny Ludlum Steel Corp. v. Workers' Compensation Appeal Board (Malobicky)*, 753 A.2d 330, 334 (Pa. Cmwlth. 2000), we affirmed a WCJ's finding that the claimant suffered the specific loss of his left arm where a neck injury

13

rendered his shoulder non-functional. Although the claimant's left elbow, hands, and fingers had no limitations, he could not move his arm from the shoulder by more than a few inches in any direction. We came to a similar conclusion in *HGO, Inc. v. Workmen's Compensation Appeal Board (Hadley)*, 651 A.2d 719, 723 (Pa. Cmwlth. 1994), in which a claimant's shoulder injury resulted in a specific loss of the arm, as he could only use his hand and forearm to perform tasks directly in front of him, he was unable to lift his arm and hold it in front of him, and he could only lift small objects for short distances using his hand, wrist, and forearm. The opposite conclusion was reached in *Miller*, 44 A.3d at 735, because the claimant in that matter retained meaningful use of her arm. We recognized that the claimant's use of her arm was limited, that using it caused her pain, and that her condition was unlikely to improve; despite these limitations, the claimant was still able to conduct many normal activities of daily life. *Id.*

Our analysis in the instant matter clearly presents some challenges, given Claimant's inability to testify as to her limitations and the medical experts' inability to assess her active range of motion. While we agree with Employer that the loss of Claimant's hands alone cannot support a finding that she has also lost the use of her arms, we should not disregard that loss in our review of the WCJ's findings. As documented by Dr. Naftulin, Claimant's passive range of motion in her shoulders was limited to 90 degrees, with little to no external and internal rotation. She had full range of motion in her right elbow, but it was limited in the left elbow. Claimant's right wrist evidenced some limitations in its range of motion, but the left wrist had none. The claimants in *HGO, Inc.* and *Malobicky* were found to have lost the use of their arms for all practical intents and purposes despite having retained function in their arms and forearms which allowed them to perform some tasks.

14

Instantly, Claimant is in a far worse position, as it is not clear what, if any, functions Claimant could perform with her hands, given the numerous contractures and amputations.

We will not disturb the WCJ's findings of fact if they are supported by substantial, competent evidence in the record. *Jacobi*, 942 A.2d at 268 n.7. Given the limitations observed in Claimant's passive range of motion in her shoulders, elbows, and wrists, and factoring in the injuries to Claimant's hands, we conclude that substantial evidence exists to support the WCJ's finding that Claimant has lost the use of her arms for all practical intents and purposes.

For these reasons, we affirm the Board.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Kemps,                                    :
                    Petitioner                 :
                                               :
         v.                                    :    No. 1099 C.D. 2020
                                               :
Kristina Steets (Workers' Compensation :
Appeal Board),                                 :
                    Respondent                 :

# **O R D E R**

AND NOW, this 24th day of May, 2021, the October 8, 2020 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge