# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carlos Urena Morocho, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1393 C.D. 2016 |
| | : | SUBMITTED: March 24, 2017 |
| Workers' Compensation Appeal | : | |
| Board (Home Equity Renovations, | : | |
| Inc.), | : | |
| Respondent | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE JULIA K. HEARTHWAY, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

OPINION BY JUDGE HEARTHWAY                    FILED:  August 3, 2017

Carlos Urena Morocho (Claimant) petitions for review of that portion of the July 20, 2016 order of the Workers' Compensation Appeal Board (Board) reversing the decision and order of the workers' compensation judge (WCJ) to the extent that it granted Claimant's claim petition and awarded specific loss benefits for the loss of use to Claimant's right index finger.  We affirm.

On August 28, 2012, Claimant sustained an injury to his right hand, including injuries to his thumb, and index and middle fingers, while using a table saw in the course and scope of his employment with Home Equity Renovations, Inc.  (Home Equity).  (WCJ's F.F. Nos. 8(g), 8(i-j), Conclusions of Law, No. 4.) At issue before this Court is only the injury to Claimant's right index finger.

On May 16, 2013, Claimant filed claim petitions against Home Equity and the Uninsured Employers Guaranty Fund (Fund), seeking workers' compensation benefits for, among other things, a specific loss of use of his right index finger. (WCJ's F.F. Nos. 3 & 5.) (Home Equity and the Fund are collectively referred to as Respondents.)[1] Respondents filed answers denying Claimant's allegations with respect to the index finger. (*See* WCJ's F.F. Nos. 5, 7(b).)

At the hearing before the WCJ, Claimant testified that on August 28, 2012, while using a table saw, his right hand slipped and his thumb, index finger and middle finger hit the blade of the table saw.[2] (WCJ's F.F. No. 8(i), R.R. at 46a, 47a.) Claimant testified that his injuries included a cut in the middle of the underside of the index finger from the top to the first joint of the finger. (WCJ's F.F. No. 8(j).) Claimant testified that the doctor put two pins in his index finger, which were removed approximately three months later. (WCJ's F.F. No. 8(k), R.R. at 52a-54a.) Claimant testified that he then saw Dr. Chen who prescribed physical therapy, and that he was currently receiving therapy for his right hand twice a week and seeing a pain management specialist. (WCJ's F.F. No. 8(l), R.R. at 55a.) Claimant testified that he has difficulty doing almost anything with his right hand and that he cannot do construction work. (WCJ's F.F. No. 8(o), R.R. at 60a-61a.) Claimant stated he has difficulty writing, playing guitar, grabbing a glass, picking up things, getting dressed and doing other activities. (WCJ's F.F.

---

[1] The Fund has intervened in the proceedings before this Court.
[2] We note that in his testimony, Claimant referred to his pointer or second finger, and sometimes the WCJ used that terminology in his findings; it is apparent that these terms refer to the index finger. We will use the term index finger to avoid confusion.

2

No. 8(o), R.R. at 61a.)  Claimant's index finger appears to be bent toward the middle finger.  (WCJ's F.F. No. 8(l), R.R. at 60a.)

Claimant also submitted records from St. Mary's Hospital where Dr. Chen performed emergency surgery, which included a right index finger irrigation debridement of open fracture; "open reduction, internal fixation index finger, P2 and P3";[3] and a distal interphalangeal fusion of index finger.  (R.R. at 130a; *see* WCJ's F.F. No. 15(a), R.R. at 130a.)  Dr. Chen's postoperative diagnosis with respect to the right index finger was "P1, P2 open fracture, partial tendon laceration, flexor digitorum profundus greater than 50% of the tendon width." (WCJ's F.F. No. 15(a)(iii), R.R. at 130a.)

Claimant also submitted a report from Dr. Chen dated March 7, 2014. Dr. Chen's report indicated that after the surgery, Claimant began therapy for his hand and that his pins were eventually removed from his index finger.  (WCJ's F.F. No. 16(b), R.R. at 161a.)  Claimant returned to see Dr. Chen on November 21, 2012, with neuropathic symptoms in his fingers and reduced motion in the index finger.  (WCJ's F.F. No. 16(b), R.R. at 161a.)  Claimant again returned to Dr. Chen on February 27, 2013, and was developing avascular necrosis of the ulnar condyle of the index finger and ulnar drift of the distal phalanx with substantial osteopenia of the fragments.  (WCJ's F.F. No. 16(c), R.R. at 161a.)  Claimant's index finger was hypersensitive at the tip.  (WCJ's F.F. No. 16(c), R.R. at 161a.)  Dr. Chen opined that Claimant "has effectively lost function of the index finger at this time for all intents and purposes."  (R.R. at 161a, *see* WCJ's F.F. No. 16(d).)

---

[3] The "P" refers to a phalanx in the index finger.  (*See* R.R. at 131a.)

Employer submitted a report dated February 26, 2014 from Andrew Sattel, M.D., who performed an independent medical examination (IME) of Claimant on February 26, 2014. (WCJ's F.F. No. 23(a).) Dr. Sattel opined that Claimant has not fully recovered from his injuries but that he needs no further diagnostic testing, therapy or surgery. (WCJ's F.F. No. 23(i).) Employer also submitted an addendum report from Dr. Sattel dated March 5, 2014, in which he clarified his opinions. (WCJ's F.F. No. 24.) Dr. Sattel opined that Claimant does not have a total loss of the right hand. (WCJ's F.F. No. 24(b), R.R. at 178a.) Dr. Sattel stated that Claimant has reached maximum medical improvement, with limited but functional mobility of the index finger. (WCJ's F.F. No. 24(b), R.R. at 178a.)

The WCJ found Claimant's testimony credible and persuasive. (WCJ's F.F. Nos. 26, 29.) The WCJ also found Dr. Chen's records and report credible, and rejected Dr. Sattel's opinions to the extent that they differed from those of Dr. Chen. (WCJ's F.F. No. 32.) The WCJ found that Claimant sustained the permanent loss of use of his right index finger for all intents and purposes, and accordingly awarded Claimant specific loss benefits, consisting of fifty (50) weeks of compensation plus six (6) weeks of compensation for the healing period. (WCJ's F.F. No. 41.)

Respondents appealed to the Board, arguing that the WCJ erred in finding that Claimant sustained a permanent loss of use of his right index finger and thereby awarding specific loss benefits. (Board's decision at 11.) The Board agreed. The Board ruled:

4

> [w]hile Dr. Chen opined that Claimant has effectively lost function of his index finger for all intents and purposes, he did not address the permanence of Claimant's loss. Thus, the evidence of record does not support a conclusion that Claimant's loss of function in his index finger is permanent, and Claimant was not able to meet his burden of proof.

(Board's op. at 12.) Accordingly, the Board reversed the WCJ's award of specific loss benefits for the injury to the right index finger.

Claimant now petitions this Court for review[4] of that portion of the Board's order which reversed the portion of the WCJ's order awarding Claimant specific loss benefits for his right index finger. Claimant argues that the Board erred in reversing the WCJ, because Dr. Chen's report constitutes substantial evidence to support a finding of permanency of the loss of use of Claimant's right index finger.

Although the term "specific loss" does not appear in the Workers' Compensation Act[5] (Act), it is used to describe the compensation payments to be made where a claimant has suffered a permanent injury. *Estate of Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 845 A.2d 239 (Pa. Cmwlth. 2004), *see* section 306(c) of the Act, 77 P.S. § 513 (defining schedule of

---

[4] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence. *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993).

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501 - 2708.

5

compensation for disability resulting from permanent injuries). When a claimant seeks specific loss benefits for an injury, "he has the burden of proving that he has permanently lost the use of his injured body part for all practical intents and purposes."[6] *Jacobi v. Workers' Compensation Appeal Board (Wawa, Inc.)*, 942 A.2d 263, 267 (Pa. Cmwlth. 2008). "Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ." *Id.* at 268. Whether an injury has resulted in the permanent loss of the use of a member, such as a hand, is a question of fact. *See Cartin v. Standard Tin Plate Co.*, 106 A. 63 (Pa. 1919) (stating that whether the condition of claimant's hand constitutes a permanent loss of use is a fact to be found and not a question of law); *cf. Workmen's Compensation Appeal Board v. Pizzo*, 346 A.2d 588 (Pa. Cmwlth. 1975) (stating that whether disfigurement is permanent or temporary is purely a question of fact). "Whether the loss is for all practical intents and purposes is a question of law." *Jacobi*, 942 A.2d at 268. While "case law does not specify what evidence is required in order to prove a permanent loss of use for all practical intents and purposes …, it is clear that a claimant must present medical evidence in order to prove that his loss of use is permanent and for all practical intents and purposes." *Jacobi*, 942 A.2d at 269. Further, "competent medical evidence of permanent loss of use for all practical intents and purposes must be presented before 'further support' in the form of a claimant's testimony can be considered." *Id*.

---

[6] "[A] loss of use for all practical intents and purposes requires a more crippling injury than one that results in a loss of use for occupational purposes." *Jacobi*, 942 A.2d at 267-68. "However, it is not necessary that the injured body part be one hundred percent useless in order for the loss of use to qualify as being for all practical intents and purposes." *Id*. at 268.

Claimant argues that his medical evidence, consisting of Dr. Chen's records and report, constitutes substantial evidence of permanency of the loss of use of Claimant's index finger. Claimant argues that he sustained bone loss and tendon loss. Claimant also asserts that the fusion of the phalanxes of the index finger is by its very definition permanent, and that necrosis is a death of tissue which also implies permanency. Claimant also relies on Dr. Chen's statement that Claimant lost function of the index finger for all intents and purposes, but misquotes Dr. Chen's report by stating that Dr. Chen stated that Claimant "had" lost function of the index finger for all intents and purposes and then maintains the word "had" implies permanency. Dr. Chen's exact statement is that Claimant "**has** effectively lost function of his index finger **at this time** for all intent [sic] and purposes." (R.R. at 161a, emphasis added.)

On the other hand, Respondents argue that the record lacks competent medical evidence of permanency and that Claimant's arguments regarding permanency are simply that – arguments and not medical evidence. Respondents also argue that the WCJ is not permitted to substitute his own medical knowledge in making his ruling and must make findings based on evidence in the record. In particular, they contend that to the extent either necrosis or fusion results in a permanent condition, that is not set forth in the medical records and the WCJ cannot substitute his own medical knowledge in making his ruling. They also contend that Dr. Chen's statement that Claimant has lost the use of his finger for all intents and purposes is a legal conclusion that has no evidentiary value and does not constitute substantial competent evidence on which to base a factual finding of permanency. We agree with Respondents.

7

Dr. Chen's records and report describe Claimant's diagnoses, but do not detail whether these are expected to be permanent. For example, Dr. Chen's records and report state that Claimant underwent a "distal interphalangeal fusion," (R.R. at 130a), and that he was "developing avascular necrosis," (R.R. at 161a). However, the evidence does not explain the factual significance of these diagnoses as they relate to the permanency of Claimant's condition. Moreover, although Dr. Chen stated that Claimant "has effectively lost function of the index finger at this time for all intents and purposes," (R.R. at 161a), this statement is not factual medical evidence regarding permanency, but rather is simply a legal conclusion, *see Jacobi*. Importantly, the distinction must be made between factual medical evidence which can constitute substantial evidence to support the WCJ's findings and legal conclusions which do not constitute such evidence.

We recognize that the party who prevailed before the WCJ is entitled to all reasonable inferences from the evidence. *Lindemuth v. Workers' Compensation Appeal Board (Strishock Coal Co.)*, 134 A.3d 111, 125, n. 12 (Pa. Cmwlth.), *appeal denied* 145 A.3d 729 (Pa. 2016). However, an inference is a conclusion that is formed from facts. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1158 (2002). Here, Dr. Chen's records and report contain no facts regarding the permanency. Rather, Claimant is asking us to assume the worst from the diagnoses and then conclude that this supports a finding of permanency. Inferences must be made from the evidence and not from an assumption or speculation; sufficiency of evidence cannot be based on assumptions. Without evidence in the record concerning permanency, one can only speculate on this question, which neither the WCJ nor this Court may do. It is Claimant's

8

responsibility as part of his burden of proof to elicit information about future functionality of his finger so that there is a factual underpinning from which one could conclude that his condition is permanent.

Accordingly, because Claimant failed to present medical evidence to support a finding that Claimant's loss of function in his index finger is permanent, Claimant is not able to meet his burden of proof, *see Jacobi*, and we are constrained to affirm the Board in this regard.

Alternatively, Claimant argues that the Board should have remanded the case for clarification from Dr. Chen regarding the permanency of Claimant's loss of use of the index finger for all intents and purposes. Claimant asks this Court to remand the matter to the WCJ for a finding relative to permanency or for further evidence to clarify the evidence in that regard.

Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 1551 provides, "[t]he court may in any case remand the record to the government unit for further proceedings if the court deems them necessary." Pa. R.A.P. 1551 also provides, in relevant part:

> [r]eview of quasijudicial orders shall be conducted by the court on the record made before the government unit. No question shall be heard or considered by the court which was not raised before the government unit except: … [q]uestions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit.

Pa. R.A.P. 1551(a)(3).

9

It is not necessary for this Court to remand the matter for further proceedings. We are not satisfied that Claimant could not have, by the exercise of due diligence, raised this question before the government unit. Our review of the record does not reveal that Claimant was precluded from questioning Dr. Chen about the issue of permanency, nor does Claimant argue he was precluded. Thus, a remand is not appropriate here. *See Wynn v. Workmen's Compensation Appeal Board (Department of Transportation)*, 466 A.2d 769 (Pa. Cmwlth. 1983) (stating remand for additional testimony is not warranted where claimant had sufficient opportunity to present evidence).

Accordingly, for the foregoing reasons, we affirm the Board's order to the extent it reversed the WCJ's order granting Claimant's claim petition for a specific loss of use of the right index finger.

_____
JULIA K. HEARTHWAY, Judge

Senior Judge Pellegrini concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carlos Urena Morocho,         :
              Petitioner    :
                             :
           v.            :  No. 1393 C.D. 2016
                             :
Workers' Compensation Appeal   :
Board (Home Equity Renovations,  :
Inc.),                        :
            Respondent   :

## O R D E R

AND NOW, this 3rd day of August, 2017, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

_____
JULIA K. HEARTHWAY, Judge