IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Madison Construction Company,           :
                                        :
                    Petitioner          :
                                        :
          v.                            : No. 1336 C.D. 2017
                                        : Submitted: March 9, 2018
Workers' Compensation Appeal            :
Board (Tascarella),                     :
                                        :
                    Respondent          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  December 6, 2018


          Madison Construction Company (Employer) petitions for review of
that portion of the order of the Workers' Compensation Appeal Board (Board)
affirming the decision of a Workers' Compensation Judge (WCJ) that dismissed
Employer's petition to suspend the compensation benefits of Kevin Tascarella
(Claimant) pursuant to the Workers' Compensation Act (Act).[1]  We affirm.

          On June 24, 2008, Claimant suffered a work-related injury to his left
hand in the nature of an amputated index finger and laceration to the other fingers
after he struck his fingers with a circular saw.  The injury was accepted in a Notice

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

of Temporary Compensation Payable that converted to a Notice of Compensation Payable.

Claimant was seen by Lynn Yang, M.D., on September 16, 2011, and January 4, 2013, for an Impairment Rating Evaluation (IRE). Following the January 2013 examination, Dr. Yang concluded that Claimant is at maximum medical improvement (MMI) from his work-related injuries and that he has a whole body impairment of 30% based on the American Medical Association (AMA) Guide.

On February 8, 2013, Employer filed a Notice of Change of Workers' Compensation Disability Status, arguing that Claimant's temporary total disability benefits had converted to temporary partial disability benefits as of January 4, 2013. On February 15, 2013, Claimant filed a Review Petition challenging Dr. Yang's IRE determination.

Following his work injury, Claimant filed a civil action for damages based on his work-related injuries. On June 20, 2013, Employer filed a Modification Petition seeking subrogation against the third-party recovery that Claimant obtained.

On July 26, 2013, Claimant filed a Penalty Petition, alleging that Employer violated the Act by failing to pay for surgery related to his work injury, seeking penalties and unreasonable contest attorney fees.

On September 12, 2013, Employer filed a Modification Petition seeking the modification of Claimant's benefits based on the results of a labor market survey. On May 1, 2014, Employer filed a Suspension Petition, seeking the

suspension of Claimant's benefits because Claimant's work-related injury had resolved into a specific loss of his four left fingers.[2]

During hearings before the WCJ, Claimant testified by deposition, stating that he has not returned to work, continues to receive total disability benefits, and he also receives Social Security disability benefits. He testified that he is unable to use his dominant left hand for any purpose, but he can use his right hand to some extent while performing daily activities such as cleaning, eating, shopping, and grooming. He stated that he does not wear pants or shoes that require laces to be tied. He also testified that he made no effort to respond to jobs identified by Employer's vocational expert because he is incapable of performing

---

[2] Section 306(c)(10) through (13) of the Act states, in relevant part:

> For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows:
>
> * * *
>
> (10) For the loss of the first finger, commonly called index finger, sixty-six and two-thirds per centum of wages during fifty weeks.
>
> (11) For the loss of a second finger, sixty-six and two-thirds per centum of wages during forty weeks.
>
> (12) For the loss of a third finger, sixty-six and two-thirds per centum of wages during thirty weeks.
>
> (13) For the loss of a fourth finger, commonly called little finger, sixty-six and two-thirds per centum of wages during twenty-eight weeks.

77 P.S. §513(10)-(13).

any of the identified jobs. He stated that he requires additional surgery with Julia Spears, M.D., a board certified plastic surgeon, but he has been unable to obtain authorization for the surgery from the insurance company.

Claimant also offered Dr. Spears' deposition testimony in support of his Penalty Petition. Dr. Spears testified that she started treating Claimant on the date of injury and she participated in the replantation surgery that reattached Claimant's left index finger and the procedures relating to the injuries to his remaining fingers. She stated that Claimant's post-operative recovery has been complicated by left hand pain and disability. She testified that following a June 12, 2013 examination, Claimant had a reduced range of motion of the left hand fingers with significant pain in the index finger and most of the hand. As a result, she recommended a tenolysis surgical procedure to reduce Claimant's symptomology, but it would likely not improve his function or allow him to be productive with his left hand.[3] She stated that following an April 16, 2014 examination, Claimant's left hand remained essentially the same and that she was able to assess the range of motion of Claimant's left fingers both actively and passively, but that his left thumb remains fully functional. She testified that he is capable of performing some form of work on a right-hand-only basis. She opined that, based on her physical examination and Claimant's description of his inability

---

[3] Dr. Spears testified, "I had recommended that he would benefit from tenolysis of his digits and possibly neurolysis for improved range of motion as well as decrease in pain," and that she recommended the procedure "[p]rimarily, for reduction of pain and increased functionality of the hand." Reproduced Record (R.R.) at 464a, 465a. She described the procedure as, "During the procedure, the area of the injury would be explored, which is primarily the palm. At that time, the tendons that travel through the palm would be released. The scar tissue surrounding the tissues would be released as well as the nerves to any scar tissues surrounding the nerves." *Id.* Dr. Spears stated that although Claimant was willing to undergo the procedure, "[i]t was not scheduled because of difficulty with approval," and "that it was not approved." *Id.*

to use his left fingers, Claimant's work-related injury has resolved into a loss of use of his four left fingers for all practical intents and purposes.

In support of its petitions, and in opposition to Claimant's petitions, Employer presented the deposition testimony of William Kirkpatrick, M.D., a board certified orthopedic surgeon with a subspecialty in hand surgery. Dr. Kirkpatrick testified that based on a September 12, 2012 examination and review of Claimant's medical records, Claimant presented with stiffness in his left hand fingers and hypersensitivity of the left hand. He stated that Claimant drove to the examination and takes Percocet on an as-needed basis, approximately two times per week. He testified that his examination of Claimant's left elbow, wrist, and thumb revealed normal range of motion and no evidence of atrophy. He stated that the MP joints or main knuckles of the left hand were all fixed: the index finger at 45 degrees; the long and ring fingers at 90 degrees; and the small finger at 20 degrees. He testified that the PIP joints or second knuckles of the left hand were all fixed at full extension. He stated that he was unable to assess the fingers' range of motion because Claimant withdrew complaining of sensitivity when he tried to touch the fingers, but he found no evidence of atrophy or trophic changes in the left fingers. He found review of the medical records remarkable because Claimant's treating doctors did not document the hypersensitivity that Claimant exhibited and they were able to assess the passive range of motion on the left side. He concluded that Claimant is capable of returning to the workforce in a modified, light-duty capacity with limited use of his left hand, and reviewed and approved the Job Analysis forms submitted by Employer's vocational expert.

In support of the Impairment Rating, Employer presented the deposition testimony of Dr. Yang, a pain management specialist who is board

certified in physical medicine and rehabilitation.  Dr. Yang testified that following a September 16, 2011 IRE examination, she noted that Claimant had essentially no movement in his left hand.  She stated that based on Claimant's lack of range of motion in his fingers, she classified the index finger, third digit, fourth digit, and fifth digit of Claimant's left hand being in a state of ankyloses or fusion.  She testified that this led her to determine, based on the AMA Guide, that Claimant had a 30% whole body impairment because of his work-related injuries.  She opined that Claimant was not at maximum medical improvement at that time because Claimant was scheduled for additional surgery that month.  She stated that following a January 4, 2013 IRE examination, Claimant had no movement in the left hand except for some adduction of the left thumb, and that her findings were identical to those following the prior examination.  As a result, she concluded that Claimant continued to have a 30% whole body impairment rating.  She also opined that, based on her examination and the IME report of Dr. Kirkpatrick, Claimant had reached MMI in his recovery from his work-related injuries.  She testified that the possibility that Claimant could have additional future surgery on his left hand did not change her opinion regarding MMI because the AMA Guide only allows for a one-year prospective window of assessment and Claimant was not scheduled for surgery in that time frame.[4]

---

[4] Dr. Yang testified in pertinent part, as follows:

> [Q. W]hat was your opinion regarding the claimant's maximum medical improvement, your opinion.
>
> A.  At this point in time?
>
> Q.  Yes.

**(Footnote continued on next page…)**

(continued…)

A. That he has reached maximum medical improvement.

Q. And Doctor, can you define what MMI, maximum medical improvement, is?

A. If I can read it out of the [AMA Guide], this is page 26 at the end of the first column.

  "Maximum medical improvement refers to a status where patients are as good as they're going to be from the medical and surgical treatment available to them.  They can also be conceptualized as a date from which further recovery or deterioration is not anticipated, although over time, meaning 12 months, there may be some expected change."

* * *

Q. Doctor, based solely on your two examinations and the definition you provided, or the definition from the AMA [G]uidelines, what is your opinion regarding the claimant's maximum medical improvement?

A. I believe – I mean until the day [Claimant] goes and has another surgery, I believe that he is at maximum medical improvement.

Q. Now, do the Guidelines enclose a time period to consider for maximum medical improvement?

A. They don't expect things to change over the next year, that would be their timeline.

Q. So the 12 months would be the timeline?

A. Correct.

R.R. at 311a-312a, 321a-322a.

7

On February 25, 2015, and March 9, 2015, the WCJ issued two decisions disposing of the various petitions.[5] With respect to Employer's Suspension Petition based on the specific loss of Claimant's four fingers of his left hand, the WCJ found the following:

> The WCJ finds from a review of the evidence that the testimony of all three medical experts in this matter, Dr. Kirkpatrick, Dr. Yang, and Dr. Spears, and the Claimant's testimony support a finding that Claimant's work-related injuries have not resolved solely into the specific loss for all practical intents and purposes of the Claimant's four fingers of his left hand as the injury of June 24, 2008 produces disability and symptoms in areas separate from the scheduled loss that resolved into a specific loss of the four fingers of the left hand, excluding the thumb which is fully functional.

WCJ's 2/25/15 Decision at 6-7. Accordingly, the WCJ dismissed Employer's Suspension Petition. *Id.* at 12.

Based on this disposition, as well as the disposition of the other foregoing petitions, both parties appealed the WCJ's Decisions to the Board. On appeal, the Board affirmed the WCJ's denial of Employer's Suspension Petition explaining, in relevant part:

> In a specific loss case, the proper test is whether the claimant has a permanent loss of use of a part of his body for all practical intents and purposes. *Keller v. [Workmen's Compensation Appeal Board] (Blair Strip Steel Corporation)*, 493 A.2d 124 (Pa. Cmwlth. 1985). It is not necessary that the injured part of his body be of absolutely no use in order to qualify for specific loss benefits. Id. However, a permanent loss of partial use is not the equivalent of the loss of use for all practical

---

[5] As the Board stated, "The two Decisions appear to be identical in all respects." Board 4/13/16 Opinion at 2 n.3.

intents and purposes. *Id.* Competent medical evidence of the permanent loss of use for all practical intents and purposes must be presented before further support in the form of a claimant's testimony can be considered. *Jacobi v. [Workers' Compensation Appeal Board] (Wawa, Inc.)*, 942 A.2d 263 (Pa. Cmwlth. 2008).

Upon review, we determine no error. [Employer] did not proffer any evidence of its own to support a finding that Claimant's work injury had resolved into a specific loss. Rather to support its argument, [Employer] relies upon a response given by Claimant's doctor, Dr. Spears, on cross-examination. Specifically, [Employer] asked Dr. Spears if Claimant's work injury had basically resolved into a loss of use of his four fingers for all practical intents and purposes. Dr. Spears responded that it had.[6] Dr. Spears did not provide an opinion anywhere

---

6 Dr. Spears testified on cross-examination, in pertinent part, as follows:

Q. Would you agree, based on what he has told you and based upon the examinations that he performed, that this man's work injury has basically resolved into a loss of use of his four fingers for all practical intents and purposes?

[Claimant's Counsel]: Objection. You are asking the doctor for a legal conclusion.

[Employer's Counsel]: I'm just asking for a medical conclusion.

By [Employer's Counsel]:

Q. Would you agree with me that, given everything he has testified to, given the result of your examinations, that his injury has evolved into a loss of use of the index, long, ring and pinky fingers for practical intents and purposes?

[Claimant's Counsel]: Same objection.

[Employer's Counsel]: You can answer it. Don't look at the attorney. Just answer the question. Go ahead.

**(Footnote continued on next page…)**

9

else within her testimony as to any loss of use, nor did she indicate anywhere in her testimony, including on cross-examination, that Claimant's injury is permanent. In specific loss cases, the test is whether the claimant has a permanent loss of use of a part of his body for all practical intents and purposes. Keller. Dr. Spears' response on cross-examination coupled with her failure to render an opinion as to permanency is not sufficient to establish that Claimant has a permanent loss of use of his four fingers for all practical intents and purposes. Therefore, the WCJ did not err by failing to find that Claimant's work injury had resolved into a specific loss.

Board 4/13/16 Opinion at 12-13.

However, while the Board affirmed the WCJ's Decisions with respect to some of the other petitions, the Board remanded the matter with regard to two of the other petitions. *See* Board 4/13/16 Opinion at 10-11, 12, 13.[7] On appeal of the WCJ's Decision following remand, the Board again affirmed the WCJ's dismissal of Employer's Suspension Petition, making its order final, and Employer filed the instant petition for review.[8, 9]

---

**(continued…)**

> [Dr. Spears]: He has basically no use, as you are saying, of his index, third digit, fourth digit, fifth digit for any practical purpose.

R.R. at 468a.

[7] By May 31, 2016 order, this Court granted Employer's motion to quash Claimant's prior appeal of the Board's 4/13/16 Opinion. *See Tascarella v. Workers' Compensation Appeal Board (Madison Construction Company)* (Pa. Cmwlth., No. 759 C.D. 2016, filed May 31, 2016).

[8] The disposition of the other various petitions is not at issue in this appeal.

[9] This Court's review of a Board's order is limited to determining whether constitutional rights have been violated, whether an error of law was committed, and whether necessary findings of fact are supported by substantial evidence. *Morocho v. Workers' Compensation Appeal Board (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017). "In
**(Footnote continued on next page…)**

10

The sole claim raised by Employer in this appeal is that the Board erred in affirming the WCJ's dismissal of its Suspension Petition because the only substantial evidence of record shows that Claimant's work-related injury has resolved into a specific loss of the four left fingers, which is a permanent loss of use for all practical intents and purposes under Section 306(c) of the Act. Specifically, Employer asserts that because the WCJ found that Claimant had reached MMI under the AMA Guide based on Dr. Yang's testimony, the Board erred in making a finding regarding permanency with respect to Section 306(c) and ignored the substantial evidence consisting of Dr. Spears' and Dr. Yang's testimony in this regard.[10]  However, Employer's claims improperly conflate the WCJ's finding of MMI as defined under the relevant provisions of the AMA Guide with permanency under Section 306(c) of the Act and the Board did not err in affirming the WCJ's Decision.

---

**(continued…)**

performing a substantial evidence analysis, the evidence must be viewed in a light most favorable to the party who prevailed before the WCJ." *Washington v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 11 A.3d 48, 54–55 n.4 (Pa. Cmwlth. 2011) (citations omitted).  Moreover, the party who prevailed before the WCJ is entitled to all reasonable inferences from the evidence. *Morocho*, 167 A.3d at 860.

[10] In support, Employer also cites Dr. Kirkpatrick's testimony that Claimant was at MMI. *See* R.R. at 1022a.  However, the WCJ did not accept this testimony in his Decision. *See, e.g.*, WCJ 2/25/15 Decision at 4.  "It is well established that the [WCJ], as factfinder, has exclusive province over questions of credibility and evidentiary weight . . . [and] is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995) (citations omitted).  The WCJ's authority as the ultimate factfinder in determining the weight and credibility of testimony is unquestioned and not subject to appellate review. *Hayden v. Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corp.)*, 479 A.2d 631, 635 (Pa. Cmwlth. 1984).

Because Employer was the party seeking the suspension of Claimant's benefits based on a specific loss under Section 306(c), it had the burden to establish that Claimant had suffered a permanent loss of use of his four fingers for all intents and purposes through competent evidence. *LaChina v. Workmen's Compensation Appeal Board (Dana Corporation)*, 664 A.2d 204, 206 (Pa. Cmwlth. 1995). As this Court has explained:

> Although the term "specific loss" does not appear in the [Act], it is used to describe the compensation payments to be made where a claimant has suffered a permanent injury. *Estate of Harris v. Workers' Compensation Appeal Board (Sunoco, Inc.)*, 845 A.2d 239 (Pa. Cmwlth. 2004), *see* section 306(c) of the Act, 77 P.S. §513 (defining schedule of compensation for disability resulting from permanent injuries). When a claimant seeks specific loss benefits for an injury, "he has the burden of proving that he has permanently lost the use of his injured body part for all practical intents and purposes." *Jacobi*[, 942 A.2d at 267]. "Whether a claimant has lost the use of a body part, and the extent of that loss of use, is a question of fact for the WCJ." *Id.* at 268. Whether an injury has resulted in the permanent loss of the use of a member, such as a hand, is a question of fact. *See Cartin v. Standard Tin Plate Co.*, [106 A. 63 (Pa. 1919)] (stating that whether the condition of claimant's hand constitutes a permanent loss of use is a fact to be found and not a question of law); *cf. Workmen's Compensation Appeal Board v. Pizzo*, [346 A.2d 588 (Pa. 1975)] (stating that whether disfigurement is permanent or temporary is purely a question of fact). "Whether the loss is for all practical intents and purposes is a question of law." *Jacobi*, 942 A.2d at 268. While "case law does not specify what evidence is required in order to prove a permanent loss of use for all practical intents and purposes . . . , it is clear that a claimant must present medical evidence in order to prove that his loss of use is permanent and for all practical intents and purposes." [*Id.*] at 269.

12

*Morocho v. Workers' Compensation Appeal Board (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858-59 (Pa. Cmwlth. 2017) (footnotes omitted).

In this case, the Board properly determined that Employer failed to produce any competent evidence supporting a determination that Claimant has permanently lost the use of the four fingers of his left hand for all practical intents and purposes under Section 306(c) of the Act. Dr. Spears' testimony that Claimant "has basically no use, as you are saying, of his index, third digit, fourth digit, fifth digit for any practical purpose," R.R. at 468a, does not support a factual finding of permanency of Claimant's specific loss. *See Morocho*, 167 A.3d at 860 ("[A]lthough Dr. Chen stated that Claimant 'has effectively lost function of the index finger at this time for all intents and purposes,' this statement is not factual medical evidence regarding permanency, but rather is simply a legal conclusion, *see Jacobi*.").

Moreover, Dr. Spears' testimony that the condition of Claimant's fingers on his left hand "was pretty much the same" from her June 12, 2013 examination to her April 16, 2014 examination, R.R. at 467a, does not support Employer's claim. At the June 12, 2013 examination Dr. Spears "recommended that he would benefit from tenolysis of his digits and possibly neurolysis for improved range of motion as well as decrease in pain," and she recommended the procedure "[p]rimarily, for reduction of pain and increased functionality of the hand." R.R. at 464a, 465a. Dr. Spears also testified that although Claimant was willing to undergo the foregoing procedure to increase functionality and decrease pain, "[i]t was not scheduled because of difficulty with approval," and "that it was not approved." *Id.*

13

However, Dr. Spears conceded, "[a]s far as function in the left hand, certainly he will not regain possibly enough function to do anything productive with it." *Id.* Nevertheless, we will not infer permanency for purposes of finding a specific loss under Section 306(c) from Dr. Spears' foregoing testimony. *See Morocho*, 167 A.3d at 860 ("Dr. Chen's records and report contain no facts regarding the permanency. Rather, claimant is asking us to assume the worst from the diagnoses and then conclude that this supports a finding of permanency. Inferences must be made from the evidence and not from an assumption or speculation; sufficiency of evidence cannot be based on assumptions.").

Further, Dr. Yang's testimony regarding MMI under the AMA Guide is not sufficient to support a determination of permanency under Section 306(c).[11] As outlined above, Dr. Yang qualified her opinion regarding Claimant's MMI stating, "I mean until the day [Claimant] goes and has another surgery, I believe that he is at maximum medical improvement," and that the determination of MMI under the AMA Guide "don't expect things to change over the next year, that would be their timeline." R.R. at 321a. The foregoing testimony does not support a determination of permanency as required by Section 306(c) of the Act. *See Morocho*, 167 A.3d at 860 ("Without evidence in the record concerning permanency, one can only speculate on this question, which neither the WCJ nor

---

[11] Likewise, Employer's reliance on *Neff v. Workers' Compensation Appeal Board (Pennsylvania Game Commission)*, 109 A.3d 291, 294 n.4 (Pa. Cmwlth. 2015) and *Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corp.)*, 954 A.2d 776, 799-80 (Pa. Cmwlth. 2008) is misplaced. In both of these cases, we considered MMI and permanency as those terms were specifically defined in the AMA Guide, which were applicable to the performance of an IRE and expressly expected a change in condition following 12 months, and which are not relevant to a determination of permanency under Section 306(c) of the Act relating to the award of specific loss benefits.

14

this Court may do. It is Claimant's responsibility as part of his burden of proof to elicit information about future functionality of his finger so that there is a factual underpinning from which one could conclude that his condition is permanent. Accordingly, because Claimant failed to present medical evidence to support a finding that Claimant's loss of function in his index finger is permanent, Claimant is not able to meet his burden of proof, *see Jacobi*, and we are constrained to affirm the Board in this regard.").[12]

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[12] Finally, even if the Board committed any of the alleged errors in affirming the WCJ's Decision, as outlined above, the Board's order will be affirmed because the WCJ properly denied Employer's Suspension Petition based on Employer's failure to sustain its burden of proof under Section 306(c) of the Act. *Morocho*; *Jacobi*. It is well settled that this Court may affirm a Board order on any basis appearing, or in this case not appearing, in the record. *See, e.g.*, *White v. Workmen's Compensation Appeal Board (Good Shepherd Rehab Hospital)*, 666 A.2d 1128, 1131 n.6 (Pa. Cmwlth. 1995) ("This court may affirm the judgment of an administrative agency where the result is correct, even though the reason given is erroneous, when the correct basis for the decision is clear on the record.") (citation omitted).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Madison Construction Company,     :
      :
              Petitioner    :
      :
               v.     :   No. 1336 C.D. 2017
      :
Workers' Compensation Appeal     :
Board (Tascarella),     :
      :
             Respondent   :

## **O R D E R**

AND NOW, this 6th day of December, 2018, the order of the Workers' Compensation Appeal Board dated August 25, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge