IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura F. Fierro, :
               Petitioner :
 :
 :
       v. :
 :
Workers' Compensation Appeal Board :
(Allied Services Healthcare Services), : No. 391 C.D. 2019
             Respondent : Submitted: July 12, 2019


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: September 5, 2019


      Laura F. Fierro (Claimant) petitions for review of the March 12, 2019 order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of Workers' Compensation Judge Howard Spizer (WCJ) that: (1) granted the Petition to Terminate Compensation Benefits (Termination Petition) filed by Allied Services Healthcare Services (Employer) against Claimant pursuant to the Workers' Compensation Act (Act),[1] and (2) denied a Petition to Review (Review Petition) filed by Claimant pursuant to the Act. We affirm.

      On April 29, 2016, while working as an occupational therapist for Employer, Claimant suffered an injury to her right ankle when she tripped and

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

stumbled over a wheelchair leg rest while attending to a patient. *See* WCJ Decision dated February 28, 2018, Certified Record Item No. 11 (WCJ Decision), Findings of Fact (F.F.) 1, 7 & 18. Employer initially issued a medical-only Notice of Compensation Payable (NCP). *See* F.F. 1. Thereafter, on July 13, 2016, Employer issued a second NCP that accepted the injury as a right ankle sprain and foot contusion and provided for payment of workers' compensation benefits in addition to the previously provided medical benefits. *See* F.F. 2.

On December 14, 2016, Employer filed the Termination Petition,[2] which alleged that Claimant had fully recovered from her work injury, had been offered a specific job, and was able to return to unrestricted work as of October 5, 2016.[3] *See* F.F. 3; *see also* Termination Petition dated December 14, 2016, Certified Record Item No. 2. On January 19, 2017, Claimant filed the Review Petition,[4] which sought to amend the NCP's injury description to include Lower Extremity Complex Regional Pain Syndrome (CRPS). *See* F.F. 5; *see also* Review Petition, Certified Record Item No. 7.

After consolidating the petitions and conducting hearings on the matter, the WCJ decided the Termination and Review Petitions by decision issued on February 28, 2018. *See* WCJ Decision. The WCJ found: (1) Employer met its burden of proving that Claimant had fully recovered from the work-related injury as

---

[2] The WCJ Decision lists the Termination Petition's filing date as December 15, 2016. *See* F.F. 3.

[3] On December 22, 2016, Claimant answered the Termination Petition in three separate filings. *See* Answer to Modify Petition filed December 22, 2016, Certified Record Item No. 4; Answer to Suspend Petition filed December 22, 2016, Certified Record Item No. 5; Answer to Termination Petition filed December 22, 2016, Certified Record Item No. 6.

[4] The WCJ Decision lists the Review Petition's filing date as January 19, 2017. *See* F.F. 5.

of October 5, 2016; and (2) Claimant failed to meet her burden of proving that she suffers from CRPS as a result of the April 29, 2016 work injury. *See* WCJ Decision at 11. Accordingly, the WCJ: (1) granted the Termination Petition, terminating Claimant's benefits as of October 5, 2016; and (2) dismissed and denied the Review Petition. *See* WCJ Decision at 12. Claimant appealed and the Board affirmed the WCJ Decision by opinion dated March 12, 2019 (Board Opinion). *See generally* Board Opinion; *see also* On-Line Appeal dated March 5, 2018, Certified Record Item No. 12. Claimant timely petitioned this Court for review.[5]

Claimant makes two claims on appeal. First, Claimant alleges that the Board erred in affirming the WCJ's grant of the Termination Petition[6] and denial of

---

[5] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

[6] We acknowledge that the Board stated that Claimant did not challenge the WCJ's Termination Petition on appeal, and thus, the Board neither considered nor discussed the Termination Petition on review. *See* Board Opinion at 2 n.1. After reviewing Claimant's appeal of the WCJ's Decision, however, we find that Claimant did challenge the WCJ's second conclusion of law and the order, both of which concerned the Termination Petition. *See* On-Line Appeal dated March 5, 2018, Certified Record Item No. 12. Thus, we find that Claimant did not waive this claim and, in the interest of judicial economy, we will address the same in this opinion as part of our evaluation of whether substantial evidence supports the WCJ's findings of fact. *See Sheridan v. Workers' Comp. Appeal Bd. (Anzon, Inc.)*, 713 A.2d 182, 184 (Pa. Cmwlth. 1998) (noting that "even where a lower tribunal does not address an issue, an appellate court may do so

3

the Review Petition because the WCJ erroneously shifted the burden of proof from Employer's obligation to illustrate a complete recovery from the work injury, and instead required Claimant to prove a continuing foot injury. *See* Claimant's Brief at 17-22. Additionally, Claimant argues that the WCJ failed to make specific findings of fact or conclusions of law regarding Claimant's accepted foot injury in addition to her ankle sprain. *See* Claimant's Brief at 22-24.

Initially, as this Court has explained:

> In a termination proceeding, the employer bears the burden of proving that a work-related disability has ceased. This burden can be met by presenting unequivocal and competent medical evidence of a claimant's full recovery from a work-related injury.[7] A determination of whether medical testimony is equivocal is a conclusion of law fully reviewable by this Court. Credibility of witnesses, however, is for the [WCJ] to evaluate and he or she may accept the testimony of one witness over that of another.

*Koszowski v. Workmen's Comp. Appeal Bd. (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991) (internal citations omitted). Additionally, "[t]he [Notice of Compensation Payable] establishes the description of the work injury and the employer must establish full recovery from the injury or injuries listed there." *Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.)*, 78 A.3d 699, 703 (Pa. Cmwlth. 2013); *see also Serrano v. Workers' Comp. Appeal Bd. (Ametek, Inc.)*, 154 A.3d 445, 453 (Pa. Cmwlth. 2017) ("[W]hen an employer seeks to

---

where all of the facts necessary to the appellate court's decision have been found by the factfinder").

[7] "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

terminate benefits, it must show the claimant has recovered from each of the separate work-related injuries for which the employer's liability has been established.").

Additionally, regarding review petitions, amendments to descriptions of accepted work-related injuries in NCPs come in two forms. *See Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 580–81 (Pa. 2009). First, an amendment to correct an inaccuracy in the identification/description of the existing injury that is recorded in an NCP at the time the NCP issues is known as a "corrective amendment." *Id.* The second type of possible amendment involves changing an NCP to account for an increase in a claimant's disability known as a "consequential condition."[8] *Id.* at 581 n.4. While these two types of possible NCP amendments have differing procedural requirements under the Act to achieve the specific amendment sought,[9] in either case, the burden to establish the existence of additional compensable injuries rests with the claimant seeking the amendment. *Id.* at 582.

Here, in support of the Termination Petition and to contest the Review Petition, Employer presented the testimony and medical reports of Barry A. Ruht,[10] M.D., a board-certified orthopedic surgeon who conducted an Independent Medical Evaluation (IME) of Claimant on October 5, 2016. *See* WCJ Decision at 3-6; F.F. 7-10. In the WCJ Decision, the WCJ provided an extensive and detailed summary of Dr. Ruht's testimony. *Id.* Notably, the WCJ stated that Dr. Ruht testified that he

---

[8] In addition to amendments based on increases in disabilities, Section 413(a) of the Act, 77 P.S. § 772, also controls amendments pertaining to decreases, recurrences, or cessation of disabilities. *See Cinram*, 975 A.2d at 581.

[9] *See* Sections 413 and 413(a) of the Act, 77 P.S. §§ 771 & 772.

[10] The WCJ Decision incorrectly spells Dr. Ruht's name as "Rhut." *See* WCJ Decision at 3 & 10-11.

discussed the April 29, 2016 incident and Claimant's medical and work history with Claimant, observed and examined Claimant, and reviewed Claimant's medical records, which records included: (1) a May 25, 2016 MRI of Claimant's right foot; (2) a separate May 25, 2016 MRI of Claimant's right ankle; (3) a March 31, 2016 x-ray of Claimant's right foot; (4) a June 27, 2016 x-ray of Claimant's right foot; (5) a July 1, 2016 MRI of Claimant's lumbar spine; (6) a June 3, 2016 EMG study; (7) treatment Notes of Samuel Valenti, M.D., Northeastern Rehabilitation Associates, P.C., from April 29, 2016 through July 15, 2016, and Letter of Medical Necessity dated August 2, 2016; (8) treatment Notes from Scranton Orthopedic Specialists, P.C., from May 26, 2016 through June 27, 2016; and (9) Geisinger Community Medical Center, Emergency Department, treatment notes from June 28, 2016. *See* F.F. 7-8; *see also* Report of Barry A. Ruht, M.D., dated October 5, 2016 (IME Report), Certified Record Item No. 37. Dr. Ruht testified that his examination revealed Claimant had a normal gait, normal skin texture, normal hair growth, normal temperature bilaterally, and no signs of CRPS. F.F. 8. Dr. Ruht explained that he found no abnormal clinical findings and normal motor strength and sensation in Claimant's lower extremities. *Id.* Dr. Ruht further explained that the MRI depicting Claimant's right ankle was completely normal. Likewise, Dr. Ruht testified that, despite positive findings on the MRI that depicted Claimant's right foot, including some soft tissue swelling and bone marrow edema, that MRI showed no evidence of any acute abnormality in Claimant's right foot. *Id.* Ultimately, Dr. Ruht opined that Claimant fully recovered from the sprains and contusions of the right foot and ankle listed as the accepted injury on the NCP. *Id.* Further, Dr. Ruht testified that, as of his examination, Claimant showed no evidence of CRPS, and none of her complaints suggested any indicators for CRPS. *Id.* Based on the above,

the WCJ noted that Dr. Ruht opined Claimant was capable of returning to her pre-injury job without restriction or additional treatment. *Id.*

In opposition to the Termination Petition and in support of the Review Petition, Claimant presented the testimony of Sheryl Oleski, M.D., a physician board-certified in physical medicine and rehabilitation, who first saw Claimant on July 6, 2016. *See* WCJ Decision at 6-8; F.F. 11-16. Dr. Oleski testified that Claimant presented with pain turning her foot and ankle as a result of injuring her ankle and foot on April 29, 2016, when she became entangled in a wheelchair leg rest while attending to a patient. F.F. 11. Dr. Oleski testified Claimant had originally been diagnosed with plantar fasciitis and ankle sprain, and that she never reported any significant ankle swelling, although she did experience some swelling around the toe and had complaints of tingling and numbness in the quadriceps muscles and some muscle spasms. *Id.* Upon physical examination, Dr. Oleski discovered Claimant suffered a bone bruise on the first digit of her right foot and a right ankle injury that had resolved at the time of the examination. *Id.* Upon reviewing the May 25, 2016 MRI report, Dr. Oleski noted some evidence of bone marrow edema on the head of the right first digit consistent with a bruise. *Id.* Dr. Oleski recommended Claimant undergo an MRI on her lower back to check for a disc herniation or something else that could be contributing to her leg pain. *Id.* She also recommended that Claimant continue working with restrictions, start physical therapy, and avoid high impact activity. *Id.* Dr. Oleski also testified that, during the July 6, 2016 examination, the existence of Claimant's neuropathic symptoms in the injured area, in the absence of supporting studies that revealed any acute abnormalities, alerted her to the possibility that Claimant may have been suffering from CRPS. *Id.*

7

Dr. Oleski explained that she saw Claimant again on August 19, 2016. F.F. 11. Dr. Oleski testified that, at that time, Claimant complained of aching discomfort in the right anterolateral thigh and pain into the lateral aspect of the right knee and ankle with cramping of the right toe. *Id.* Claimant reported to Dr. Oleski that she would experience coldness in her right foot, but had not noticed any significant color change of the foot or right leg. *Id.* At that time, Claimant reported to Dr. Oleski that pain limited Claimant to standing and walking for 5 to 10 minutes, that she was able to sit for 30 minutes, and that her pain interfered with her ability to sleep. *Id.* Dr. Oleski testified, however, that an MRI performed was normal. *Id.* Dr. Oleski explained that she diagnosed Claimant with "ongoing right foot and ankle pain due to late effects of sprain, bone contusion affecting the right first digit of the foot, and possible perineal neuritis." *Id.*

Dr. Oleski also testified that she recommended that Claimant see a foot and ankle specialist, which Claimant accordingly did. F.F. 11. Thereafter, Dr. Oleski again re-examined Claimant on October 24, 2016, at which time Claimant complained of a tingling, pins-and-needles sensation extending from her lateral thigh through the dorsum of her right foot with an occasional burning sensation. *Id.* At that time, Claimant also claimed to be developing swelling through the right big toe and a deep aching feeling in that area of the foot, although Claimant denied swelling in the leg. *Id.* Dr. Oleski testified that her examination of Claimant on October 24, 2016 revealed a mildly antalgic gait pattern on the right side, hypertrophy of the right great toe joint that was more "ruddy" in color than the left side, and normal reflexes. *Id.* Dr. Oleski did not note any swelling during the examination, although she noted that Claimant's right foot was more pale in comparison to her left foot. *Id.*

8

Relying partly on the opinion of the foot and ankle specialist[11] and her examination that revealed allodynia,[12] pain, and some skin coloration changes, all of which Dr. Oleski indicated suggested CRPS, Dr. Oleski diagnosed Claimant with CRPS affecting the right leg. F.F. 12 & 14. Effectively, Dr. Oleski diagnosed CRPS as a diagnosis of exclusion when her physical examination of Claimant revealed no other soft tissue injury that would explain Claimant's subjective complaints of pain. F.F. 12. Dr. Oleski noted that the effectiveness of the lumbar sympathetic block injection[13] Claimant underwent supported the CRPS diagnosis, as did her reported difficulty wearing shoes.[14] F.F. 13-14. In discussing the CRPS diagnosis, Dr. Oleski explained that Claimant's right great toe contusion and right ankle sprain and strain had fully resolved. F.F. 14.

Claimant testified on her own behalf before the WCJ in opposition to the Termination Petition and in support of the Review Petition. *See* WCJ Decision at 8-10; F.F. 18-19. Claimant testified that she worked for Employer as an occupational therapist treating patients to increase their independence with the activities of daily living. F.F. 18. She described her work duties at the time of her injury as well as her non-work activity level prior to the incident. *Id.* Claimant explained that, on April 29, 2016, while greeting a patient, she tripped and stumbled

[11] Dr. Oleski explained that the foot and ankle specialist's report indicated an impression of right foot and ankle dysarthia, "most likely RSD/CRPS." F.F. 12.

[12] "Allodynia" refers to pain resulting from a stimulus that would not ordinarily provoke pain, such as a light touch of the skin. *See* F.F. 12.

[13] A sympathetic block injection is a diagnostic and therapeutic tool used to help improve a patient's pain and reset the nervous system. F.F. 13.

[14] Dr. Oleski also recommended Claimant undergo a bone scan to further confirm the CRPS diagnosis. F.F. 12. Claimant underwent the scan, but it did not prove helpful in confirming the CRPS diagnosis. *Id.*

over a leg rest left on the floor. *Id.* Claimant testified that her ankle rolled and both her feet became entangled with the leg rest, but that she was able to catch and brace herself on an activity table to prevent herself from falling. *Id.* Claimant testified that she felt swelling and pain in her right foot at the time of the incident. *Id.*

Claimant explained that, prior to the April 29, 2016 incident, she had a bone spur in her right big toe joint, which had been successfully treated with a cortisone injection. F.F. 18. Claimant testified that, following the April 29, 2016 incident, she received treatment from one of Employer's physicians, who prescribed prednisone and physical therapy. *Id.* She continued to work, but her condition worsened and she was taken out of work on May 19, 2016. *Id.* Claimant testified that a second doctor ordered and reviewed a foot x-ray, upon which the doctor diagnosed neuropraxia. *Id.* The second doctor referred Claimant to Dr. Oleski, to whom Claimant reported that she believed she had injured her ankle in addition to her foot because of the swelling, pain, and numbness and tingling traveling up Claimant's legs to her calf. *Id.* Claimant explained that she attempted to return to work for a few weeks in June 2016, before she left work and reported to an emergency room to treat her continuing symptoms. *Id.* One of Employer's physicians again took Claimant out of work on June 28, 2016. *Id.* Thereafter, Claimant reported to Dr. Oleski and the foot and ankle specialist for further treatment. *Id.*

Claimant further reported that she had burning pain in her quadriceps muscle, numbness and tingling in her calf, and changes in her foot through September of 2016. F.F. 18. She explained that she began to notice skin color changes and changes in hair growth on her foot and lower leg. *Id.* She explained that initially, in July 2016, the changes had been limited to the top of her right foot

10

near her big toe, with the color changes occurring primarily on the top of her foot and her ankle. *Id.* She explained that she knew something was wrong; she could see the color differences by comparing her feet, and that her right foot would turn alternately very pale at times and very red at other times. *Id.* Claimant testified that by September and October 2016, the pain in her foot never fully went away. *Id.* She testified that her right big toe would spasm and push down toward the base of her foot. *Id.* She explained that she was unable to wear any footwear except orthotic sandals. *Id.* She had tenderness in her ankle and, at times, in her calf as well. *Id.*

Claimant testified that, during the IME, Dr. Ruht did not acknowledge her complaints of pain sensitivity when she attempted to explain them to him. F.F. 18. She explained that, when she went to the IME, she was walking differently and her entire leg was spasming. *Id.* She also explained that she was experiencing numbness and tingling in her ankle and foot at the time of the IME. *Id.*

Claimant also testified that she has stopped driving because the tingling and numbness in her ankle and foot has caused difficulty driving. F.F. 18. She explained that the sympathetic block injection she underwent helped her symptoms and decreased her burning pain and sensitivity, but that the pain never fully went away in her foot and ankle as a result of the injection. F.F. 18 & 19. Ultimately, however, she does not feel capable of returning to any type of work and has been restricted in her non-work activities. F.F. 18. Claimant admitted that her symptoms have decreased, but that she still experiences some ankle pain, numbness, and tingling. F.F. 19.

Claimant also presented the testimony of her husband, Anthony Fierro, before the WCJ. *See* WCJ Decision at 10; F.F. 20. Mr. Fierro testified that, with the exception of the bone spur in her big right toe, Claimant did not suffer from any

11

problems prior to her April 29, 2016 work injury. F.F. 20. Mr. Fierro explained that since April 2016 he has observed Claimant's foot change color and spasm. *Id.* He further explained that Claimant does not now drive or wear any shoes that cover the top of her foot or ankle. *Id.*

Based on the testimony and evidence presented, the WCJ made the following relevant determinations:

> 23. After reviewing the evidence presented by both parties, this WCJ, having spent considerable time and effort reviewing and re-reading the deposition testimonies of these doctors, has determined the testimony and opinion of Dr. Rhut [sic] to be more credible, persuasive, and convincing than that of Dr. Oleski. While this WCJ notes that there are certain criteria with regard to diagnosis of CRPS, Dr. Rhut [sic] explained in more detail the findings pursuant to what is known as the Budapest standard with regard to skin color changes, temperature changes, hair changes, and other criteria he listed, and found that Claimant did not meet the criteria for that diagnosis. He specifically listed those on pages thirty-three (33) and thirty-four (34) of his deposition, which are sensory, temperature, color, sweating/swelling, and trophic changes, none of which the Claimant had on the date of his examination. He further advised that none of those signs or symptoms are present in the records he reviewed for his IME. It is his opinion that Claimant is capable of performing her previous occupation without restrictions.
>
> 24. With regard to the testimony of Dr. Oleski, it appears on page thirty-four (34) of her deposition that she bases her opinion of Claimant's change in pain syndrome on the lumbar sympathetic block. On cross-examination, the witness admitted there was no swelling, and was unable to refute the Budapest criteria referenced by Dr. Rhut [sic].

25. While the testimony of Claimant and her husband are found to be credible to the extent that Claimant does, in fact, suffer from some type of pain in her right ankle and foot, and while there has been some indication [of] some color change, [the testimony of Claimant and her husband] is not medical testimony to substantiate a diagnosis of CRPS based upon the criteria elaborated by Dr. Rhut [sic]. It appears that none of the testing ordered by Dr[]. Oleski and [the foot and ankle specialist], such as the triple phase bone scan, were able to corroborate any diagnosis of CRPS, and therefore the sole diagnosis for this condition was Dr. Oleski's testimony based on her physical observations.

26. This WCJ therefore finds the testimony of Dr. Rhut [sic] to be more credible, persuasive, and convincing than the evidence offered on behalf of the Claimant with regard to the diagnosis of CRPS and any disabling condition.

F.F. 23-26. Of course, the WCJ determines credibility and weight of evidence, and neither the Board nor this Court may overturn those determinations on appeal. *Koszowski*, 595 A.2d at 699; *see also Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *reargument denied* (Apr. 3), *appeal denied*, 173 A.3d 252 (Pa. 2017) ("Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations.").

As a result of the WCJ's credibility determinations, which we must accept, as did the Board,[15] we find that substantial record evidence supports the WCJ's findings of fact. Specifically, Dr. Ruht's credible testimony supports the finding that Claimant had fully recovered from all aspects of her April 29, 2016 work-related injury as of October 5, 2016, and that Claimant failed to establish that

---

[15] *See* Board Opinion at 5-6.

she suffers from CRPS as a result of the April 29, 2016 work injury. *See* F.F. 7-10 & 26. Therefore, the WCJ properly terminated Claimant's compensation benefits from October 5, 2016 onward, and properly denied the Review Petition. *See* WCJ Decision at 11 & Order. We find no error in the Board's affirmance of the WCJ's decision.[16]

Further, despite Claimant's argument to the contrary, the Board found that the WCJ did not improperly shift the burden of proof to her to prove the CRPS was caused by her work injury. *See* Board Opinion at 6-7. In the Review Petition, Claimant sought recognition of her alleged CRPS as a consequential condition arising from the original April 29, 2016 work injury. As explained *supra*, in such a review petition, the burden properly rests with claimants to establish the existence of additional compensable injuries. *Cinram*, 975 A.2d at 582. Additionally, with regard to the Termination Petition, we note that the WCJ properly placed the burden of proving that Claimant no longer suffers from any injury as a result of the April 29, 2016 work injury on Employer, and ultimately concluded that Employer met this burden. *See* WCJ Decision at 11. Therefore, we find no error in the Board's rejection of Claimant's burden-shifting argument.

For the reasons stated above, the Board's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[16] We acknowledge that the basis of our affirmance of the Termination Petition differs from that of the Board, which determined that Claimant waived any challenge to the Termination Petition by failing to raise the same. *See* Board Opinion at 2 n.1; *see also* Note 6, *supra*. We note, however, that this Court may affirm the Board's decision affirming the Termination Petition on different grounds. *See Stalworth v. Workers' Comp. Appeal Bd. (Cty. of Del.)*, 815 A.2d 23, 30 (Pa. Cmwlth. 2002) (holding that this Court may affirm the result reached below if it "is correct without regard to the grounds relied upon by that court").

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Laura F. Fierro,      :
    Petitioner    :
            :
   v.       :
            :
Workers' Compensation Appeal Board :
(Allied Services Healthcare Services), :  No. 391 C.D. 2019
    Respondent   :

## O R D E R

AND NOW, this 5th day of September, 2019, the March 12, 2019 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge